UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GLORIA MARSHALL, )
)
    Plaintiff, )
)
v. ) CASE NO. 3:14CV-359-R
)
THE RAWLINGS COMPANY LLC )
Serve: Patricia G. Tobin, Esq. )
       One Eden Parkway )
       La Grange, Kentucky 40031-8100 )
)
and )
)
UNKNOWN DEFENDANT(S), )
)
    Defendants. )

## VERIFIED COMPLAINT

\* \* \* \* \* \* \* \*

    Comes the Plaintiff, Gloria Marshall, individually and by counsel, and for her cause of action against the Defendants, states as follows:

    1.    The Court has jurisdiction due to a federal question as this action is brought pursuant to the provisions of The Family and Medical Leave Act (herein "FMLA"), 29 U.S.C. § 2610, et. seq.

    2.    Venue is proper as the Plaintiff, Gloria Marshall ("Marshall"), is a resident of the Commonwealth of Kentucky and resides at 1217 Crown Avenue, Louisville, Jefferson County, Kentucky, and Defendant, The Rawlings Company LLC ("Rawlings"), was, at all times material herein, a Domestic corporation, doing business in the Commonwealth of Kentucky with a place of business located in La Grange, Oldham County, Kentucky.

3. Defendants, Unknown Defendant(s), is an unknown person(s) or entity(ies) which Plaintiff has, through a due diligence pre-filing investigation, attempted to learn the identity of, but has been unsuccessful in such efforts as of the filing hereof.

4. At all times material herein, Marshall was an "employee" of Rawlings as defined by 29 U.S.C. § 2611(2); and Rawlings was and is an "employer" as defined by 29 U.S.C. § 2611(4).

6. In January 2006, Marshall was employed by Rawlings and continuously remained so employed until her discharge on October 1, 2013.

7. Marshall worked on salary with incentives based on performance and productivity and began her employment at Rawlings as a Workers Compensation Analyst.

8. While employed, she was a top performer with excellent performance reviews, regular salary increases, and substantial incentive compensation.

9. Marshall suffers from anxiety, depression, bipolar and post-traumatic stress disorders which manifested during her employment at Rawlings. Nevertheless, she continued to perform her job duties at a high level.

10. In 2011, Marshall was promoted to Team Leader in the Workers Compensation Division where she continued to excel.

11. In January, 2012, Marshall's medical disorders necessitated that she take a medical leave under FMLA until March 2012.

12. When she returned from leave, in March 2012, her work was waiting for her and she was required to clear up the backlog while keeping up with her current caseload, as well as to participate in a project to promptly close out all of her no recovery files, all of which was a big undertaking that required her, at times, to work twelve (12) to fourteen (14) hours a day. During this time, Vice President of Subrogation Jeff Bradshaw also required Marshall, but not other

Team Leaders, to spend thirty (30) minutes per day with each new analyst on her team which consisted of more new analysts at that time than many of the other teams. Marshall voiced her concern to Operational Manager Leah Sarley and Division Direction Mike Elsner that she was being set up for failure since taking FMLA leave.

13. In September 2012, even though Marshall successfully completed the tasks set forth above, as well as, successfully developed a file reduction calculator which was implemented and is used throughout her Division, Rawlings demoted Marshall from Team Leader to Analyst obviously in retaliation for her taking medical leave and which cost her several thousand dollars a year in compensation, as well as, embarrassment and humiliation.

14. In March, 2013, as a result in large part to the stressful work environment to which Marshall was subjected, she suffered another health setback relating to her medical disorders and again took medical leave under FMLA for several weeks until April 2013. When she came back to work, it was obvious she was no longer welcome at Rawlings.

15. Specifically, Vice President of Subrogation Jeff Bradshaw singled her out for harassment and questioned her in front of her peers about morale at a department luncheon in May 2013. On another occasion, in August 2012, he also belittled her for taking medical leave by sarcastically asking her whether she planned to take leave again.

16. Then, Rawlings pushed Marshall to file a harassment complaint regarding Bradshaw's conduct and when she refused, forced a harassment Complaint on Marshall in order to entrap her and form Rawlings' pretextual basis for its subsequent termination of Marshall's employment.

17. Specifically, on or about September 23, 2013, Rawlings Division Director Mile Elsner called Marshall and co-worker Tina Whitmer to a hasty meeting with Team Leader Matt

Monyhann claiming Marshall was taking too many breaks. When Marshall protested, Elsner asked her about her attitude, why she was not being "as passionate about work," and morale. She then explained that she felt that ever since she took FMLA leave, she was discredited, sidelined and setup for failure. She also stated that she felt Bradshaw harassed her by demoting her after her first leave period and then verbally again by singling her out at the employee luncheon upon her return from the second leave period.

18. Elsner stopped the meeting, excused Whitmer, and continued on with Marshall. He asked if she would make a harassment complaint and she declined.

19. Two days later, on September 25, Elsner again spoke to her about making a harassment complaint. When she again declined for fear of losing her job, he said he would file it on her behalf.

20. On Monday, September 30, Marshall was called into a meeting with Division President Laura Plumley regarding the complaint Elsner filed. Marshall explained she did not intend to file any formal complaint for fear of losing her job but explained after being questioned by Plumley that she felt she had been singled out and discredited ever since she took FMLA leave. Plumley chastised Marshall for verbalizing the harassment by telling Marshall it was "suspicious" that Marshall first raised the issue during a counseling meeting, but she then encouraged Marshall to immediately raise such issues in the future and assured Marshall that she would not be fired.

21. But, the next day, October 1, Rawlings Company owner George Rawlings called Marshall to a meeting first thing in the morning, stated he did not agree that Bradshaw was harassing, and fired her allegedly for having a "bad attitude."

22. Marshall reasserts the above allegations in paragraphs 1-21 and for these reasons, Rawlings interfered with Marshall's exercise of her rights provided by the FMLA and discriminated against Marshall for taking medical leave under the FMLA in violation of the FMLA, 29 U.S.C. § 2615, et seq.

23. Pursuant to 29 U.S.C. § 2617, Marshall is entitled to judgment enjoining such unlawful conduct, judgment for actual damages sustained, judgment for court costs incurred, judgment for reasonable attorneys' fees incurred, and judgment for all other remedies provided by 29 U.S.C. 2610, et seq..

24. As a direct and proximate result of Rawlings' violations of the FMLA, Marshall incurred wage, bonus, and benefit losses in amounts which are yet to be determined.

25. As a direct and proximate result of Rawlings' violations of the FMLA, Marshall has suffered and will continue to suffer physical pain, emotional distress, mental anguish, humiliation, embarrassment and personal indignity resulting in damages in an amount which is yet undetermined.

26. The acts of Rawlings in violation of the FMLA, specifically, forcing Marshall into a harassment investigation that she did not want and tried to avoid, and then using such situation as a pretext to discharge her employment in retaliation against her for exercising her rights under the FMLA, is outrageous, shocks the conscience, and is beyond the bounds of civilized society.

27. Rawlings' actions were intentional, willful and malicious, were carried out by Rawlings with flagrant indifference to Marshall's rights, were carried out by Rawlings with an awareness that such conduct would result in physical and emotional injury and harm to Marshall, and were specifically intended to subject Marshall to cruel and unjust hardship.

28. Rawlings intentional and unlawful interference with Marshall's rights constitute extreme and outrageous conduct.

**WHEREFORE,** the Plaintiff, Gloria Marshall, demands judgment as follows:

1. For a judgment enjoining the Defendants from further violations of 29 U.S.C. §2610, et seq.; and

2. For a judgment against Defendant Rawlings ordering Marshall's reinstatement to her previously held position of employment; and

3. For a judgment against the Defendants, for wage and other monetary losses incurred and to be incurred in the future; and

4. For a judgment against the Defendants, for physical pain, emotional distress, mental anguish, humiliation, embarrassment, and personal indignity; and

5. For a judgment against the Defendants, for court costs and for her attorneys' fees; and

6. For a trial by jury on all issues so triable herein; and

7. For such other necessary and proper relief to which Plaintiff may appear entitled.

/s/ *Jill M. Guarascio*
JILL M. GUARASCIO
125 Chenoweth Lane
Suite 308
Louisville, Kentucky 40207
(502) 895-1517
jill@guarasciolawgroup.com

and

J. CHRIS SANDERS
The Esterle House
1228 E. Breckinridge Street
Louisville, KY 40204
(502) 718-9025
csanders@chrissanderslaw.com
*(Attorneys for Plaintiff)*

## VERIFICATION

I, Gloria Marshall, have read the foregoing Verified Complaint and the statements contained therein are true and correct to the best of my knowledge and belief.

*/s/ Gloria E. Marshall*
GLORIA MARSHALL

COMMONWEALTH OF KENTUCKY)
                          :SS
COUNTY OF JEFFERSON       )

Subscribed, sworn to and acknowledged before me by Gloria Marshall on this 21st day of April, 2014.

My Commission Expires: March 22, 2016

*/s/ Jill M. Guarascio*
JILL M. GUARASCIO, Notary Public,
Kentucky at Large