UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 3:14-CV-00359

GLORIA MARSHALL,                                                                                               Plaintiff

v.

THE RAWLINGS COMPANY, LLC
and UNKNOWN DEFENDANT(S),                                                     Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant The Rawlings Company, LLC's Partial Motion to Dismiss those portions of Plaintiff's Complaint asserting claims for intentional infliction of emotional distress, punitive damages, and emotional distress damages. (Docket No. 4). Plaintiff Gloria Marshall has responded, (Docket No. 10) and Defendant Rawlings has replied. (Docket No. 12). This matter is now fully briefed and ripe for adjudication. For the following reasons, Defendant's Partial Motion to Dismiss those portions of the Complaint asserting claims for intentional infliction of emotional distress, punitive damages, and emotional distress damages is denied.

**BACKGROUND**

This litigation arises from the termination of Plaintiff Gloria Marshall's employment with the Rawlings Company, LLC ("Rawlings"). Rawlings employed Marshall from January of 2006 to October of 2013.

Marshall alleges that she performed her job duties at a high level and was promoted in 2011 from Workers Compensation Analyst to Team Leader in the Workers Compensation Division. Marshall suffers from "anxiety, depression, bipolar and post-traumatic stress disorders which manifested during her employment at Rawlings." (Docket No. 1). As a result of her

1

medical disorders, she took medical leave under the Family Medical Leave Act ("FMLA") from January of 2012 until March of 2012. Upon returning to work, she alleges that she was required to take on additional projects and tasks while still managing her previous caseload. She expressed concerns that she was "being set up for failure since taking FMLA leave" to Operational Manager Leah Sarley and Division Director Mike Elsner. (*Id*.). In August of 2012, Vice President of Subrogation Jeff Bradshaw "sarcastically ask[ed Marshall] if she planned to take leave again." (*Id*.). In September of 2012, she was demoted from Team Leader to Analyst, which caused her "embarrassment and humiliation." (*Id*.).

In March of 2013, Marshall had another health setback and again took medical leave under the FMLA until April of 2013 "as a result in large part to the stressful work environment." (*Id*.). Marshall claims that Defendants' behavior after her return made it "obvious she was no longer welcome at Rawlings." (*Id*.). In May of 2013, Vice President of Subrogation Jeff Bradshaw "singled her out for harassment" at a department luncheon and questioned Marshall about morale. (*Id*.). On September 23, 2013, Elsner called Marshall into a meeting with Team Leader Matt Monyhann, who claimed Marshall took too many breaks. Elsner asked her about her attitude and Marshall explained that she felt she was "setup for failure" after taking FMLA leave and that Bradshaw harassed her. (*Id*.). Elsner asked if she would make a harassment complaint and she declined. He asked again two days later and she again declined, "for fear of losing her job." (*Id*.). Elsner said he would file it on her behalf.

On September 30, 2013, Marshall was called into a meeting with Division President Laura Plumley regarding the complaint that Elsner filed. Marshall said that she did not intend to file any complaint "for fear of losing her job" but explained that she felt "singled out" after taking FMLA leave. (*Id*.). Plumley told Marshall it was "suspicious" that she first raised the

issue during a counseling meeting, but assured Marshall that she would not be fired. The next day, October 1, Rawlings Owner George Rawlings called Marshall to a meeting, and fired her for "having a 'bad attitude.'" (*Id*.).

Marshall alleges violations of her rights under the FMLA, 29 U.S.C. § 2601, *et. seq*., and a claim of intentional infliction of emotional distress.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency, Inc*., 552 F.3d at 434 (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim becomes plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (citing Fed.R.Civ.P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

## DISCUSSION

### I. Plaintiff's IIED claim is not preempted by her FLMA claim.

Marshall alleges that Rawlings "intentional and unlawful interference with [her] rights constitute extreme and outrageous conduct." Rawlings argues that Marshall's claim of intentional infliction of emotional distress ("IIED") is preempted by her FMLA claim. (Docket No. 4).

Kentucky considers the tort of outrage, or IIED, to be a "gap filler." *Farmer v. Dollar Gen. Corp.*, 2012 WL 4364108, at *7 (W.D. Ky. Sept. 24, 2012) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App.1993)). As such, a plaintiff cannot proceed on an IIED claim where the alleged conduct makes out a claim for another tort for which emotional distress damages would be available. *Id*.; *see Grace v. Armstrong Coal Co., Inc.*, 2009 WL 366239, at *3–4 (W.D. Ky. Feb. 13, 1999) (dismissing IIED claim where claims for defamation and wrongful discharge provided for emotional distress damages).

Emotional distress damages are not recoverable under the FLMA. *Brumbalough v. Camelot Care Ctrs.*, 427 F. 3d 996, 1008 (6th Cir. 2005); *see also Whitworth v. Consolidated Biscuit Co.*, 2007 WL 1075774, at *11 n.9 (E.D. Ky. April 6, 2007) (noting that the FLMA would not preempt a claim for IIED "because the FLMA does not allow recovery for emotional

4

distress"). Rawlings argues that because the Kentucky Civil Rights Act ("KRCA") preempts an IIED claim, the FLMA should as well. However, the KRCA has been interpreted as "allowing claims for damages for humiliation and personal indignity. Similarly, an IIED claim seeks damages for extreme emotional distress." *Kroger Co. v. Buckley*, 113 S.W.3d 644, 646–47 (Ky. Ct. App. 2003) (internal citations omitted); *see also Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 592 (W.D. Ky. 2004) (dismissing a plaintiff's IIED claim because the KCRA preempted it by providing damages for humiliation and person indignity as would a claim for IIED).

Therefore, Marshall's IIED claim is not preempted by the FLMA, because although the claims may involve substantially the same conduct, the FMLA does not allow recovery of damages for emotional distress.

**II.     Plaintiff has alleged enough sufficient facts for her IIED claim to proceed.**

A prima facie case of IIED requires that Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky. 1990)). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788–89 (citing Restatement (Second) of Torts § 46(1) cmt.h (1965)).

Marshall claims that Rawlings' conduct was outrageous and caused her severe emotional distress. Kentucky courts have "set a high threshold for outrage claims," S*tringer*, 151 S.W.3d at 791. "[A] claim for the tort of outrage requires the plaintiff to prove conduct which is 'so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46 cmt.d (1965)).

In order to survive a motion to dismiss, a plaintiff must allege sufficient facts to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Kentucky courts have refused to entertain a claim of outrage in many cases that alleged more serious conduct than that alleged by the Plaintiff. The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky.1996).

However, Marshall's allegations are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555. Marshall has sufficiently alleged that Rawlings' actions were intentional and caused her severe emotional distress. She has alleged that she suffers from a variety of mental disorders that were exacerbated by the working conditions at Rawlings, necessitating two periods of leave under the FMLA. Further, she alleges that she was harassed upon her return to work, and that she was assured she would not lose her job just one day before she was fired. Finally, Marshall also alleges that she suffered embarrassment and humiliation. As this is a motion to dismiss, the Court will allow the Plaintiff's claim of IIED to go forward at this time.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant's Partial Motion to Dismiss Plaintiff Gloria Marshall's Complaint, (Docket No. 4), is **DENIED**.

IT IS SO ORDERED.

Date:

cc: Counsel