UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-359-TBR

GLORIA MARSHALL,                                              PLAINTIFF

v.

THE RAWLINGS CO., LLC,                                       DEFENDANT

### Memorandum Opinion & Order

This matter comes before the Court upon thirteen Motions in Limine filed by Defendant The Rawlings Company, LLC ("Rawlings"). Plaintiff Gloria Marshall ("Marshall") has also filed a Motion in Limine of her own. These Motions are ripe for adjudication, and their merits are discussed below.

### I. Factual Background

A more detailed factual background section describing the underlying events giving rise to this case was provided by the Court in its previous Memorandum Opinion docketed at DN 87. The brief reiteration of facts laid out below is taken from that Opinion. In essence, Marshall was formerly employed by Rawlings, a company which provides sophisticated data mining and recovery services to health insurance carriers. There, Marshall was employed as a Workers' Compensation Analyst, and was later promoted to Team Lead, before being demoted back to analyst and, ultimately, being terminated from the company. Laura Plumley, ("Plumley"), the President of the Workers Compensation department, made the initial decision to demote Marshall from a Team Lead back to an analyst.

Marshall suffers from depression, anxiety, bipolar disorder, and post-traumatic stress disorder, ("PTSD"), and, while employed by Rawlings, took leaves of absence from her job

under the Family and Medical Leave Act ("FMLA"). The first time was from February 7, 2012 to around March 13, 2012. Her second stint of FMLA leave began on March 18, 2013, and she did not return to work until March 29. Thereafter, Marshall took intermittent FMLA leave due to her anxiety, depression, bipolar disorder, and PTSD from April 2013 to August 2013. Throughout this time, there is a great deal of conflicting evidence regarding how far behind Marshall fell with respect to her work, how much or little help was offered to her in response to her work backlog, and how she was treated in the workplace. Rawlings contends that her troubles stemmed from her work performance and attitude, while Marshall has alleged that the isolation she suffered after returning from FMLA leave was because of resentment amongst other employees for having taken that leave in the first place. Plaintiff alleges that some of her troubles at Rawlings stemmed from interactions with Vice President Jeff Bradshaw, ("Bradshaw"), who apparently made several rude comments to her, at least one of which pertained to her having taken leave for her mental health issues. Marshall also had some workplace troubles with Michael Elsner, ("Elsner"), a Division Director in the Workers Compensation department. Eventually, Marshall was fired by George Rawlings, ("Mr. Rawlings"), the owner of the company, on October 1, 2013 during a meeting between the two parties and an employee from the Human Resources department.

Thereafter, Marshall filed this lawsuit seeking relief under the FMLA, the Americans with Disabilities Act, ("ADA"), and Kentucky common law for Intentional Infliction of Emotional Distress. This Court initially granted summary judgment to Rawlings on all of Marshall's claims. However, on appeal the Sixth Circuit, affirming in part and reversing in part, remanded Marshall's claims for FMLA retaliation and ADA discrimination to this Court. Now, in anticipation of a trial in this matter, Rawlings has filed thirteen motions in limine seeking to

have various pieces of evidence excluded, and Marshall has filed one. The merits of these motions and the Court's disposition on each are laid out below.

## II. Legal Standard

Utilizing its inherent authority to manage the course and direction of the trial before it, this Court has the power to exclude irrelevant, inadmissible, or prejudicial evidence through in limine rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). Unless the evidence at issue is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). This stance is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling in limine, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38). Thus, even where a motion in limine is denied, the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

### III. Motion in Limine to Exclude Other Alleged Complaints about Jeff Bradshaw

In its first Motion in Limine, Rawlings seeks to preclude any attempts by Marshall to introduce evidence about complaints other Rawlings employees allegedly made against Bradshaw. [DN 44.] In support of this Motion, Rawlings argues that such complaints would be irrelevant to the case at bar and, alternatively, if such complaints are relevant, their introduction would be unfairly prejudicial to Rawlings.

Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relatedly, Fed. R. Evid. 402 explains that "[i]rrelevant evidence is not admissible." Importantly, the test for relevancy presents a low bar of entry. *See Cambio Health Solutions, LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007); *see also United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) ("The standard for relevancy is extremely liberal") (internal quotation marks omitted). As the Sixth Circuit has explained, "even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996).

Thus, the first question is whether other employees' complaints regarding Bradshaw pass this low bar. The Court is satisfied that they do. Marshall indicates in her Response to the instant Motion that these complaints, although unidentified by either party, could be similar to the ones filed by Marshall against Bradshaw. [DN 69, at 2.] To that end, the Court finds it plain that such complaints regarding Bradshaw, his treatment of other employees, and his general demeanor at work towards his subordinates certainly has a "tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. Certainly, Bradshaw is not a party to this action, nor are any other individual employees of Rawlings. However, this alone does not render complaints against Bradshaw, an important player in Marshall's employment with Rawlings, completely irrelevant to the issue of Marshall's demotion and termination from the company. Marshall had numerous unpleasant interactions with him, and he made a recommendation to Plumley in 2012 that she demote Marshall from her position as Team Lead back to analyst.

The second question, and the more difficult one, is whether such complaints should still be excluded as unfairly prejudicial. Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In the instant Motion, Rawlings argues that the probative value of introducing other employees' complaints about Bradshaw would be substantially outweighed by the unfair prejudice to Rawlings. [DN 44-1, at 3.] Specifically, Rawlings argues that introduction of this evidence would (1) waste time by forcing Rawlings to "conduct[] mini-trials to debunk those employees' allegations against Bradshaw;" (2) risk the jury placing an improper amount of weight on those other complaints; and (3) disadvantage Rawlings "since the jury may improperly attribute any opinion of Bradshaw to the company as a whole, even though he did not play a role in [Marshall's] demotion or termination." [*Id.* at 3-4.]

Importantly though, Rawlings does not point to any specific complaints against Bradshaw, identify the employee or employees who made these complaints, or provide the Court with any of the specific allegations made in the complaint or complaints against Bradshaw. Also, the Court has no way of knowing whether these complaints were made in formal writings or were simply some offhanded comments made by other Rawlings employees. The Court is cognizant of the fact that the introduction of other Rawlings employees' complaints against Bradshaw presents two dangers: (1) wasting time and confusing the issues by making the parties conduct mini-trials, which is a real concern; and (2) the danger of running afoul of Fed. R. Evid. 404(a), which prohibits the introduction of evidence of a person's character or character traits "to prove that on a particular occasion the person acted in accordance with the character or trait."

However, without more information from either party, including the specifics of these complaints and the circumstances surrounding them, it would be premature to exclude such evidence at this juncture. This is because, unless evidence is patently "inadmissible for any purpose," *Jonasson*, 115 F.3d at 440, the "better practice" is to defer evidentiary rulings until trial." *Sperberg*, 519 F.2d at 712. This is the preferred practice because it allows "questions of foundation, relevancy and potential prejudice…[to] be resolved in proper context." *Gresh*, 738 F. Supp. 2d at 706. In light of this, the Court will deny the Motion at this time. Having stated the above, to aid the Court in advance of trial and possibly avoid multiple objections, **the Court requests further briefing on the matter. On or before March 9, 2018, each party shall file briefs identifying specific complaints and witnesses. Responses shall be filed by March 16, 2018, and no replies shall be filed.**

### IV. Motion in Limine to Exclude Testimony and Evidence about What Physicians and any other Individuals Told Marshall about Rawlings Allegedly Causing Her Emotional Distress

The next Motion at issue is Rawlings' Motion in Limine to exclude all testimony and evidence regarding what physicians and/or other individuals told Marshall about Rawlings allegedly causing her emotional distress. [DN 45.] Rawlings argues that any such statements are hearsay, and that these statements would not fall under any exception to the rules against hearsay; therefore, they must be excluded from trial. In response to this, Marshall argues that the exclusion Rawlings seeks is "vague and overbroad," premature, and that she should be permitted to introduce "evidence to prove damages for mental and emotional injuries including humiliation, embarrassment, personal indignity, emotional distress and other intangible injuries." [DN 62, at 2-3.]

"Hearsay is an out-of-court statement offered for the truth of the matter asserted." *United States v. Halter*, 259 F. App'x 738, 741 (6th Cir. 2008) (citing Fed. R. Evid. 801(c)). Generally,

hearsay is inadmissible at trial. Fed. R. Evid. 802. There are, of course, numerous exceptions to the rule against hearsay. *See* Fed. R. Evid. 803, 804, 807. The exception pinpointed by Rawlings is the one found at Fed. R. Evid. 803(4). Entitled "Statement Made for Medical Diagnosis or Treatment," this exception to the rule against hearsay provides that a statement, otherwise properly classified as hearsay, will be admissible where "(A) it is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Rawlings makes references to this exception as support for its argument that the evidence and testimony it seeks to have excluded in the instant Motion falls *outside* its scope. Thus, Rawlings argues, it is properly classified as hearsay and should not be admissible at trial. [*See* DN 45-1, at 2-3.]

The Sixth Circuit has held that "the hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment." *Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (explaining that the "physicians' statements…are not admissible pursuant to the Fed. R. Evid. 803(4) hearsay exception."); *see also Bulthuis v. Rexall Corp*, 789 F.2d 1315, 1316 (9th Cir. 1985) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse."). As Marshall correctly points out, the Sixth Circuit adheres to the maxim that "[o]rders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg*, 519 F.2d at 712. However, Sixth Circuit precedent is clear that the "Statement Made for Medical Diagnosis or Treatment" exception does not apply to statements made by the medical professional. And although the instant Motion casts a wide net, it is largely appropriate under the circumstances. Thus, the Court will grant the Motion insofar as it pertains to statements made by medical professionals or other individuals to Marshall in the course of her seeking medical treatment, as

such information falls outside the relevant exception to the rule against hearsay. Of course, if Marshall at any time should feel as though this exception, or any other rule of evidence, warrants the inclusion of certain evidence currently excluded by this order, she may approach the bench to discuss the matter further.

### V. Motion in Limine to Exclude Comments by Doug Gurley, Chris Gardner, Elizabeth Davidson and Leah Sarley

The next Motion at issue is Rawlings' Motion in Limine to exclude certain comments Doug Gurley, ("Gurley"), and Elizabeth Davidson, ("Davidson"), née Estrada, made to Marshall regarding things that were said about her by Chris Gardner, ("Gardner"), and Leah Sarley ("Sarley"). [DN 46.] Specifically, Rawlings wishes to have excluded two comments about which Marshall testified during her deposition. First, Gurley informed Marshall that Gardner had approached him and suggested that he stop having lunch with Marshall and stop spending time with her on breaks. [DN 46-1, at 1.] Second, Marshall testified that Davidson approached her and told Marshall that while she was out of the office on FMLA leave, Gardner "commented that he wished he could take weeks off too, in reference to her FMLA leave. Davidson claimed that in response, Sarley snickered and said, 'yeah, me too.'" [*Id.*] Rawlings argues that the comments at issue are (1) inadmissible hearsay, (2) irrelevant, and (3) unfairly prejudicial. [DN 46-1, at 2.]

As explained above, "[h]earsay is an out-of-court statement offered for the truth of the matter asserted." *Halter*, 259 F. App'x at 741 (citing Fed. R. Evid. 801(c)). Generally, hearsay is inadmissible at trial. Fed. R. Evid. 802. And while there are many exceptions to the rule against hearsay, Fed. R. Evid. 803, 804, 807, the two statements at issue fit the definition of hearsay and, as such, must be excluded from trial. Obviously, both comments are out-of-court statements, and therefore fit the first part of the definition of hearsay. *See* Fed. R. Evid. 801(c). The question then

becomes whether such evidence would be offered by Marshall "to prove the truth of the matter asserted in the statement." *Id.* The Court finds that they would be.

To be sure, the ultimate issue is not that Marshall would attempt to offer the two original statements to prove the truth of their contents (*i.e.*, that Gardner actually wanted Gurley to stop spending time with Marshall, or that Gardner and Sarley actually wished that they could take time off like Marshall). Rather, the "truth of the matter asserted" here is the question of whether Gurley and Davidson ever made these statements at all. In other words, this situation represents a "hearsay-within-hearsay" situation. Gurley and Davidson allegedly told Marshall about these two statements that were made to or in front of them, and now Marshall wishes to offer Gurley's and Davidson's relay of the conversations for the truth of the matter asserted; namely, that Gurley and Davidson ever said what Marshall contends they did. Marshall wishes to prove the truth of the matter asserted that Gurley and Davidson told her what *they* were told about her by Gardner and Sarley. This is inadmissible hearsay, and these statements must be excluded from trial. Notably, in her Response to the instant Motion, Marshall does not address the issue of hearsay, explain why these comments are not hearsay, offer an exception to the rule against hearsay, or cite any authority directed thereto. As such, these two statements must be presently excluded from trial, in the context of how Marshall wishes to introduce this evidence, that is, through her own testimony. This is not to say that such evidence would or would not be admissible if introduced through Davidson or Gurley.

## VI. Motion in Limine to Exclude Comments by Jeff Bradshaw Unrelated to Marshall's FMLA Leave and/or Marshall's Alleged Disability

The next Motion at issue is Rawlings' Motion in Limine to exclude certain comments made by Bradshaw to Marshall, which were allegedly unrelated to Marshall's FMLA leave and/or alleged disability. [DN 47.] Although the Motion refers generally to Bradshaw and his

discussions with Marshall, and appears to ask for an order from this Court excluding all comments he has made to Marshall which do not relate directly to FMLA or her alleged disability, the Court will only analyze the three specific instances included in the Motion. The Court assumes that if there were other instances, Rawlings would have brought them to the Court's attention.

The first of these instances relates to an "appreciation lunch" in May 2012. [DN 47-1, at 2.] Marshall testified at her deposition about the conclusion of the lunch:

> At the end – when everyone finished their meal, Jeff Bradshaw started questioning the table, and he asked, 'so what is the morale on the floor?' I did not respond, and neither did anyone else at the table. And then he specifically said, 'how about you, Gloria, why don't you tell me about' – you know, 'what do you think,' or something to that nature….And what I did was, I tried to give a very generic response in order to satisfy his question, but not get into any kind of confrontation, because I could tell that he was trying to instigate some kind of debate. And I stated that I felt like some – you know, the analysts on the floor, some of them were doing very well and some of them were just getting by, and I left it at that….

[DN 47-1, at 2 (quoting Marshall Dep., 23:17-26:2).] Although this Court sees marginal value in the above-quoted conversation, the Court will deny Rawlings' Motion on this count. Throughout this case, Bradshaw's demeanor and actions at Rawlings during Marshall's period of employment with the company have come up more than once. And though it does not follow that every interaction between the pair is relevant to Marshall's specific legal claims, the Court has decided that Bradshaw's comments at the appreciation lunch pass the low threshold for relevance under the Federal Rules of Evidence. *See* Fed. R. Evid. 401, 402. Marshall points out that "discriminatory intent can be proven in a number of way[s] and Plaintiff need not be limited to proving this discriminatory motive solely through specific comments that say the words 'FMLA' or 'disability' specifically." [DN 68, at 3.] The Court agrees with this notion.

The Court is further directed in its decision to allow the introduction of this conversation at trial by the decision of the Sixth Circuit Court of Appeals, wherein it reversed in part this Court's grant of summary judgment in favor of Rawlings. In that opinion, the Sixth Circuit dedicated an entire paragraph to the May 2012 appreciation lunch. [DN 90, at 5.] Indeed, the Sixth Circuit made specific note of the fact that, in Marshall's opinion, Bradshaw "wanted to single me [Marshall] out and put me in a corner in front of my coworkers in the middle of a restaurant," and "was intentionally trying to escalate…the conversation in order to antagonize me." [*Id.* (citing Marshall Dep. at 24-26).] The Court is reluctant to exclude this testimony when it was noted as a portion of the factual basis for reversal.

Further, the Court does not see how the introduction of this conversation will unduly prejudice Rawlings. It relies in its Motion on the notion that, to introduce evidence of the conversation would be to risk the jury improperly inferring that Bradshaw's opinion of Marshall would be properly attributed to the whole company. [DN 47-1, at 7.] However, as Marshall is proceeding under the Cat's Paw theory of liability, part of her case rests upon actors such as Bradshaw influencing the actual decisionmakers in an effort to see her demoted and, ultimately, terminated. As such, conversations of this nature have seen their probative value increase as the theory of the case has developed. This, coupled with the Sixth Circuit's emphasis on this conversation, guides this Court's decision to allow its inclusion at trial.

The second instance was another conversation Marshall had with Bradshaw after she returned to work from her first stint of FMLA leave. Apparently, Bradshaw asked Marshall "in a rude way" if she was planning on taking any additional time off from work. [*Id.* (citing Marshall Dep. 62:3-11).] The Court finds this comment to be relevant under Fed. R. Evid. 401 as well. Indeed, this comment relates directly to Marshall taking FMLA leave. Thus, it is "of

consequence" in this action. *See* Fed. R. Evid. 401. It goes to the relationship between Marshall and Bradshaw and, relatedly, other Rawlings employees' thoughts on her taking leave. While Rawlings is correct in pointing out that, overtly as least, the statement does "not contain any criticism of Plaintiff's FMLA leave or her disability," [DN 47-1, at 6], the issue of whether the implications of his comment and general demeanor insinuated something different is part of what makes the comment relevant, especially because it does pertain to her taking FMLA leave at least in the general sense.

Having determined that evidence of this conversation is relevant, the question must be asked whether its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403, thus warranting its exclusion from trial. Rawlings makes two arguments, the first of which is that it would be unfairly "disadvantaged since the jury may improperly attribute the opinions of Bradshaw to the company as a whole, even though he did not play a role in Plaintiff's demotion or termination." [DN 47-1, at 7.] But this misconstrues Marshall's allegations. Marshall has not alleged that the ultimate decisionmakers, Plumley and Mr. Rawlings, retaliated or discriminated against her in response to her having taken FMLA leave. Rather, Marshall has chosen to proceed on the Cat's Paw liability theory, wherein she has alleged that individuals, including Bradshaw and Elsner, influenced the ultimate decisionmakers in an inappropriate fashion relating to her FMLA leave. *See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006) ("[T]he term 'cat's-paw' refers to one used by another to accomplish his purposes. In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."); *see also Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 496 (6th

Cir. 2015) ("Assuming without deciding that the cat's paw theory of liability is available in FMLA retaliation cases…."). Thus, as noted above, Marshall's theory actually depends upon Bradshaw not being a "decisionmaker" in terms of authority to demote and/or terminate her employment at Rawlings. This means that comments Bradshaw allegedly made to her pertaining to FMLA leave, her disability, and his general attitude toward those two things are highly probative with respect to her claims in this case. To be sure, this evidence is damaging to Rawlings, but "[e]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006).

The second argument advanced by Rawlings is that "[t]he admission of these isolated comments will obviously prejudice Rawlings since the jury may attribute unnecessary weight to them," and Rawlings will be forced to waste the Court's time in correcting what it perceives to be that error. [DN 47-1, at 7.] However, as the Court noted above, Marshall's theory of the case has made Bradshaw's comments quite relevant and probative, and how much weight the jury gives to his comments with respect to the Cat's Paw theory of liability is a matter to be hashed out at trial, and not in limine. Moreover, the Court does not believe that time will be wasted by Rawlings having to elicit additional testimony and adduce additional evidence to counter this kind of evidence, since Marshall is proceeding under the theory that Bradshaw influenced in some way the decision to demote and/or terminate her. Such testimony and evidence will likely be necessary in any event.

The third instance relates to a 2013 meeting, at the conclusion of which Bradshaw apparently asked the twenty or so employees present if anyone had any questions. No one responded, and Bradshaw allegedly looked at Marshall and said, "how about you, Gloria? You

always have something to say." [DN 37, at 20-21.] Marshall alleges that "[s]he simply responded that she was just happy to be there." [*Id.* at 21.] That Bradshaw chose to single out Marshall in front of a group of around twenty Rawlings employees with the seemingly condescending or rude comment of "you always have something to say" certainly passes the low threshold for relevance presented by Fed. R. Evid. 401. Moreover, the simple fact that the "[t]he admission of th[is]…comment[] will…prejudice Rawlings" does not mean Fed. R. Evid. 403 requires its exclusion. [*See* DN 47-1, at 7.] And as noted above, just because Bradshaw's comment might paint Rawlings in a more unfavorable light and prejudice it somewhat, it is only where that prejudice is undue where Fed. R. Evid. 403 demands exclusion. *See Chambers*, 441 F.3d at 456. Marshall has chosen to proceed under the Cat's Paw theory of liability, and as such will likely try to present a great deal of circumstantial evidence concerning her superiors' attitudes towards her, of whom Bradshaw was one. This makes the instant comment highly relevant and probative, and the Court finds that any prejudicial effect to Rawlings would not be undue under the circumstances.

### VII. Motion in Limine to Exclude Alleged Discussions about a Performance Improvement Plan for Marshall

The next Motion at issue is Rawlings' Motion in Limine to exclude alleged discussions about a performance improvement plan for Marshall. [DN 48.] Rawlings contends that the presentation of evidence regarding these discussions would be unfairly prejudicial to Rawlings under Fed. R. Evid. 403, and further, that it would mislead the jury and prolong the trial. As such, Rawlings argues that all such evidence should be excluded. In her Response, Marshall argues that the evidence is highly relevant and is not so prejudicial or misleading so as to render it inadmissible. [DN 71.] The Court agrees, and will deny Rawlings' Motion.

A Performance Improvement Plan, or PIP, appears to be a tool utilized by Rawlings to help employees who are struggling with productivity to get back on track. During his deposition, Elsner testified about the 2013 discussions he had with Team Lead Matt Monyhan, ("Monyhan"), regarding the potential for putting a PIP in place for Marshall, a conversation that never materialized into a PIP being set for her. [DN 34-1, at 9.] These discussions were held due to Marshall's alleged low file inventory and excessive backlog in her 2013 mid-year evaluation. [*Id.*] Elsner stated that the reason he and Monyhan ultimately did not recommend putting Marshall on a PIP was that they were not sure whether or not to do so would have violated FMLA provisions. [DN 37-2, at 32-33.] In support of the instant Motion to exclude these conversations, Rawlings argues that the presentation of these discussions to the jury would (1) be unfairly prejudicial, (2) confuse the jury, and (3) be a waste of time, all contravening Fed. R. Evid. 403.

With respect to Rawlings' first argument, the Sixth Circuit has held that "unfair prejudice within the context of Rule 403 means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hathaway*, 798 F.2d 902, 909 (6th Cir. 1986) (quoting Fed. R. Evid. 403 advisory committee's note) (internal citations omitted). In short, Rawlings argues that to allow Marshall to present evidence of these discussions, and in particular, their comments on the legality of placing Marshall on a PIP so close to her FMLA leave, would twist the overall spirit of the discussion in the minds of the jurors "into something sinister…." [DN 48-1, at 4.] Conversely, Marshall argues that evidence of the discussion is highly probative and "shows that Defendant targeted Plaintiff for discharge." [DN 71, at 3.] It is clear to the Court that, depending upon how the jury perceives these discussions, this evidence could be prejudicial to Rawlings, or it could have little to no effect.

However, it is axiomatic that "all probative evidence is to some extent prejudicial," and so the mere fact that evidence one side seeks to have admitted is harmful to the opposing party cannot, in and of itself, warrant this Court's exclusion of that evidence. *See United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011). In *United States v. Mason*, 294 F. App'x 193, 200 (6th Cir. 2008), the Sixth Circuit held that the trial court did not abuse its discretion in excluding medical records where the defendant was convicted for making false statements to obtain federal employees' compensation benefits and bankruptcy fraud. The trial court found that the medical records corroborating the defendant's testimony regarding his taking of antidepressants, although probative of his specific intent, held a great risk of misleading the jury and/or confusing the jury because the medical records were so attenuated in time (compiled in 1993 and no crimes were charged until 2001). *Id.* Additionally, the trial court found that to introduce these documents without an expert explanation would invite "guesses and speculation." *Id.*

Conversely, in this case, there is no such attenuation. The conversation between Elsner and Monyhan occurred directly within the relevant timeframe of Marshall's employment with Rawlings, her FMLA leave, and her demotion and termination. Moreover, a conversation between laypeople does not carry the same risks of confusion as medical records. The meat of the conversation between Elsner and Monyhan concerns whether to place Marshall on a PIP because she had fallen behind at work. This topic is very basic and the Court is confident that the jury would have the capacity to understand the discussions. Finally, Rawlings' argument that the introduction of the evidence could mislead the jury into thinking that Elsner's and Monyhan's comments concerning the legality (or illegality) of placing Marshall on a PIP so close to her FMLA leave was "sinister" in nature is a matter for the jury. It appears from Marshall's Response that she wishes to introduce evidence of this conversation to show that Defendants

targeted her for discharge, but were put off because of her FMLA leave, [DN 71, at 2-3], much in the same way Rawlings would construe the discussions as "Rawlings opt[ing] not to impose the PIP because it did not want to violate Plaintiff's FMLA rights." [DN 78, at 1.] These conflicting characterizations are issues for the jury to decide.

Rawlings' final argument is that the introduction of one conversation between Elsner and Monyhan concerning the possibility of placing Marshall on a PIP would be a waste of time warranting exclusion under Fed. R. Evid. 403. The Court disagrees. Certainly, bringing the issue of PIPs before the jury will warrant Rawlings hammering out the issue further and explaining in more detail the idea of PIPs. However, this information would be, in the Court's estimation, highly probative and not a waste of time. The Court will deny this Motion. [DN 48.]

### VIII. Motion in Limine to Exclude Comments Allegedly Made by other Employees about Rawlings' Attitude towards FMLA Leave

The next Motion at issue is Rawlings' Motion in Limine to exclude certain comments allegedly made by other Rawlings employees regarding the company's attitude toward FMLA leave. [DN 49.] In the Motion, though, Rawlings only references one Rawlings employee, Elizabeth Davidson (née Estrada).[1] Therefore, insofar as Rawlings has attempted, via this Motion, to exclude any comments made by any other Rawlings employees concerning the company's attitude toward FMLA leave, the Court must deny the Motion, as sufficient information has not been presented of any of these other alleged comments for the Court to pass judgment on their admissibility at a trial. Accordingly, this section will deal only with the issue of the admissibility of Davidson's testimony. In support of its contention that Davidson's testimony is inadmissible, Rawlings presents three arguments: first, that the information contained in her affidavit and, therefore, the subject matter of any testimony she would give,

---

[1] In her affidavit, she is referred to throughout as Elizabeth Estrada. However, for the sake of uniformity, the Court will continue to refer to her by her married name, Davidson.

would be irrelevant under Fed. R. Evid. 401 and 402; second, that such testimony would be unfairly prejudicial under Fed. R. Evid. 403; and third, that Davidson lacks personal knowledge under Fed. R. Evid. 602. [*See* DN 49-1, at 1-6.] Because the Court finds no relevance in the information provided by Davidson, evidence of the comments allegedly made by Sarley and Gardner and which form the basis of Davidson's affidavit will be excluded.

As noted above, Fed. R. Evid. 401 explains that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." And although the bar is a low one, and the standard is liberal, not every proposed piece of evidence will bear upon the issues in the trial. This is one such piece of evidence. The Court agrees with Rawlings' characterization of the issue: "proof about how another employee…felt does not make any fact at issue relevant to [Marshall] more or less probable." [DN 49-1, at 4.] Specifically, Davidson's affidavit and, presumably, the extent of her knowledge on the issue, only explains that Sarley held a condescending manner when explaining to another Team Lead that Marshall was on FMLA leave. [DN 37-12, at 2.] A condescending tone used by an individual in February 2012 in reference to Marshall's whereabouts, where the person making the comment, who even under the Cat's Paw theory of liability, had no involvement in demoting or terminating Marshall or recommending such actions, does not, in the Court's view, make any fact in evidence more or less probable and is not of consequence in determining the action, as required by Fed. R. Evid. 401. To be clear, the sole fact that Sarley was not the ultimate decisionmaker does not, in and of itself, render evidence pertaining to her irrelevant under Fed. R. Evid. 401. Rather, the circumstances surrounding the comments Davidson heard, taken together, render the comments irrelevant. However, the Court is not aware of any assertions or evidence that Sarley influenced

any adverse decision as to Marshall. If Marshall is aware of such assertions or evidence, she needs to bring that to the Court's attention.

Moreover, even if evidence of the comments made by Sarley and Gardner were relevant, the danger of unfair prejudice to Rawlings should this Court include it justifies its exclusion. As explained above, Fed. R. Evid. 403 reasons that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of…unfair prejudice…. If the Court were to introduce the comments from Sarley and Gardner, the prejudice to Rawlings would great. This is because the interpretation of a condescending tone from a person not involved in any way in the demotion or termination process, coupled with an offhandedly insensitive comment by another individual who had no authority over Marshall, could go in one of a thousand different ways and, when balanced against the probative value of such offhanded comments and tones of voice, the prejudicial nature substantially outweighs any value they would bring to a trial. There is nothing to suggest that Sarley's tone or Gardner's comment are representative of Rawlings' thoughts and practices on the issue, and Sarley and Gardner are not a part of this lawsuit, nor is it contended by Marshall that they were involved in her demotion and/or termination in any way. When examining the circumstances, it is apparent to the Court that this evidence is irrelevant and, furthermore, would constitute unfair prejudice to Rawlings if it were to be included.

## IX. Motion in Limine to Exclude Email from Matt Monyhan Concerning the Team Leader Bonus

The next Motion at issue is Rawlings' Motion in Limine to exclude from evidence an email sent by Monyhan to Bradshaw and Elsner. [DN 50.] The email is docketed in Marshall's Response to Rawlings' Motion for Summary Judgment. [DN 37-27.] The email, sent on July 2, 2013, makes references to Marshall being absent on FMLA leave, and notes that Human

Resources instructed Monyhan as follows: "an analyst who is absent for FMLA-related reasons must be given pro-rated performance goals based upon the time that they were actually in attendance." [*Id.*] As a consequence of prorating Marshall's performance goals, instead of falling short of her $202,625 goal, she exceeded the prorated goal of $183,629. [*Id.*] Apparently, Monyhan, as a Team Lead, receives bonuses when the analysts on his team, of whom Marshall was one, exceed their goals. [*Id.*] Essentially, the email is a request from Monyhan to receive his bonus because, although Marshall did not reach her original goal, she exceeded her prorated goal. [*Id.*] The email also goes on to provide as follows:

> [s]ince a large portion of my income is dependent upon my analysts hitting their quarterly goal, the extended absence of a team member for FMLA has a negative effect on my paycheck. In [Marshall's] case, there were many instances when I would spend hours in a given day working on files and phone calls that could not wait for her return. So, there is extra work with less reward. However, if consideration is given to the goals of the analyst, then it only stands to reason that the goals of the Team Lead should be adjusted as well.

[*Id.*] Now, Rawlings seeks to have this email excluded from the trial in this matter as (1) irrelevant, (2) prolonging the trial, and (3) confusing or misleading the jury. [DN 50-1, at 1.]

As explained by the Court above, the threshold for relevancy under Fed. R. Evid. 401 is quite low. *See DXS, Inc.*, 100 F.3d at 475 ("[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth."). Rawlings argues that the email in question is irrelevant to Marshall's discrimination claim "since Monyhan played no role in her demotion or her termination." [DN 50-1, at 2.] The Court finds this argument unpersuasive. The Court is sensitive to the fact that, at base, Monyhan apparently had no authority to terminate Marshall from Rawlings. However, that fact, standing alone, cannot render this email irrelevant to the case at bar, especially as Marshall is proceeding on the Cat's Paw theory of liability. Moreover, it is

hard to see how Marshall's direct supervisor commenting on how her leave of absence (1) increased his workload, and (2) could potentially cost him money, would not be relevant to a case in which the plaintiff was terminated from her employment with the company. To use the language of the rule, the comments made by Monyhan in the email make it more probable than it would be without the comments that Rawlings, or individuals within the management structure there, harbored a discriminatory attitude towards Marshall. *See* Fed. R. Evid. 401.

Next, Rawlings argues that introduction of this evidence would unnecessarily prolong the trial. Specifically, Rawlings laments the fact that, if this singular email were to be introduced, it would "be forced to explain the Team Lead bonus process in substantial detail to alleviate any misunderstanding about Monyhan's email." [DN 50-1, at 5.] Rawlings goes on to posit that "[s]uch an explanation may involve calling additional witnesses, and thereby unnecessarily prolong[] the trial to present proof about an email that includes little, if any, relevant information." [*Id.*] The Court disagrees with this characterization of the email. To be sure, Marshall's presentation of this email could require Rawlings to present such additional evidence to counter its effect, but that alone does not make the inclusion of the email a "waste of time" under Fed. R. Evid. 403. And given the probative nature of the email's contents, the Court is not inclined to declare that the necessity of introducing some additional evidence would constitute a waste of time.

Finally, Rawlings argues that the presentation of this email to the jury could confuse and/or mislead the jury, thus warranting its exclusion as unfairly prejudicial. [DN 50-1, at 4-5.] Specifically, Rawlings argues that "[i]f this proof comes into evidence, the jury may improperly attribute the opinions or concerns of Monyhan to the company as a whole, even though he unquestionably did not play a role in Plaintiff's demotion or termination." [*Id.* at 4.] In support of

this argument, Rawlings cites to numerous cases, including the Sixth Circuit's decisions in *Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003) and *Suits v. Heil Co.*, 192 F. App'x 399, 407 (6th Cir. 2006). Notably though, in both of these cases, the Sixth Circuit dealt with district court grants of summary judgment in favor of the defendant companies, and not with motions in limine.

To be sure, the law to which Rawlings cites is correct, *e.g.*, "that stray remarks, particularly those made by a person other than a decision-maker, are not enough to show discrimination." *Suits*, 192 F. App'x at 407. However, that isolated piece of law does not, in and of itself, dictate the outcome of a motion in limine to exclude an email, even if the drafter was not a "decision-maker." The non-decision-maker to which the Sixth Circuit referred in *Suits* appears to have been a Ready Truck Manager named Steve Dupuis, who stated that "women should stay home with their children." *Id.* However, "Dupuis did not supervise [the plaintiff] and was not involved in the decision to eliminate her position." *Id.* Here, Rawlings argues that Monyhan was not involved in the decision to demote and, later, terminate Marshall, [DN 50-1, at 4], but Monyhan *was* Marshall's supervisor, unlike the individual in *Suits*, and thus, was likely more closely involved in her day-to-day activities. Additionally, as Marshall is proceeding under the Cat's Paw theory of liability, Monyhan's comments have become even more probative.

Rawlings also cites to *Greenfield v. Sears, Roebuck & Co.*, No. 04-71086, 2006 WL 2927546, at *8 (E.D. Mich. Oct. 12, 2006). In that unpublished opinion, the Eastern District of Michigan, quoting the Michigan state court of appeals, stated that "[t]he risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer."

*Id.* (quoting *Krohn v. Sedgewick James of Michigan, Inc.*, 624 N.W.2d 212 (Mich. App. 2001)). While this language certainly favors Rawlings' position concerning the email in question, this Court finds it to be ultimately unpersuasive under the specific circumstances of this case.

As the Sixth Circuit has made clear, "unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to the evidence which tends to suggest a decision on an improper basis." *United States v. Caver*, 470 F.3d 220, 240 (6th Cir. 2006) (internal citations omitted). The only "improper basis" suggested by Rawlings here is that the jury may be confused and assume Monyhan's opinion was the company's opinion, or that he played a role in her demotion or termination. [*See* DN 50-1.] While the *Greenfield* case backs up Rawlings' assertion, this Court is not bound by that decision. Moreover, another of this Court's sister courts, the Southern District of Ohio, reached the exact opposite conclusion under very similar circumstances. *See Nair v. Columbus State Community College*, No. 2:02-cv-595, 2008 WL 11351301, at *1-*3 (S.D. Ohio Jul. 2, 2008). There, the plaintiff filed a lawsuit against her former employer alleging national origin discrimination. *Id.* at *1. Some of the evidence the defendant sought to have excluded, via a motion in limine, from trial were so-called "stray remarks" made by various individuals within her department at the school. As Rawlings has done here, the defendant in *Nair* argued that because one remark was made by an employee who was not a "decisionmaker," it was irrelevant and would be unfairly prejudicial. *Id.* at 2. In denying the defendant's motion in limine, the Court cited to *Caver*, 470 F.3d at 240, and noted that such remarks would not prompt a jury to reach conclusions based upon "an improper basis." *Id.* at *3. The Court agrees with the decision in *Nair* and will deny Rawlings' instant Motion. [DN 50.]

## X. Motion in Limine to Exclude any Evidence about Notes that Marshall Allegedly Gave to Laura Plumley

The next Motion at issue is Rawlings' Motion in Limine to exclude any evidence regarding a note that Marshall allegedly gave to Plumley during their September 2013 meeting. [DN 51.] Specifically, Rawlings explains that Marshall testified at her deposition that she gave a note containing a list of complaints concerning her treatment after taking FMLA leave to Plumley at a meeting that month. [DN 51-1, at 1.] Rawlings argues that evidence of this note should be excluded from trial for three reasons: first, the note was never produced during discovery and, accordingly, it should be excluded; second, introduction of the note would violate Fed. R. Evid. 403 as being unfairly prejudicial to Rawlings [*id.*]; and third, introduction of the evidence would violate the "Best Evidence Rule," Fed. R. Evid. 1002. [DN 81, at 2.] The Court finds that Marshall may make references to it at trial in her testimony, and will therefore deny Rawlings' Motion.

First, with respect to Rawlings' claim that, because the note was not produced during discovery it must be excluded, the Court is not persuaded. As an initial matter, in every trial, testimony is elicited which conveys information not directly uncovered during discovery, or which expands upon matters learned during the discovery process. Second, Rawlings deposed Marshall about the note, and learned also that the note was lost. [*See* DN 51-1.] Certainly, Marshall could not now present the purported note in hard copy after having failed to disclose it during discovery. However, it does not automatically follow that she cannot testify about a note she herself drafted.

Second, as discussed above, Fed. R. Evid. 403 allows for a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice…." To be sure, Marshall's testimony concerning the note would have a prejudicial effect on Rawlings, in that it apparently lays out Marshall's concerns regarding FMLA, Rawlings' policy

and practice concerning FMLA, and alleged disability discrimination and retaliation there. [*See* DN 65, at 1.] It also tends to show that, while Marshall was still employed by Rawlings, she held these concerns. However, if Marshall is called as a witness, as the drafter of this note, she may testify to having written it, and regarding what things the note contains. The probative value of the note is substantial, considering that part of Marshall's theory is that she held grave concerns about her treatment in the workplace while she was still employed there, and that she voiced these concerns to individuals such as Plumley. The Court is cognizant of the prejudicial effect Marshall's testimony about the note could have against Rawlings but, when balanced against the highly probative nature of Marshall's alleged preparation of the note, the scales tip more heavily in favor of her, and leads to the Court's ultimate conclusion that Marshall may testify concerning the note at trial. Rawlings argues that, since it has not reviewed the note, Marshall "can make up whatever she wants to since Rawlings never received a copy…." [DN 81, at 1-2.] Rawlings is reminded that witnesses are sworn in before giving testimony and perjury laws are protection enough against a witness concocting fantasies while being examined and cross-examined on the stand.

Finally, the Court finds that the Best Evidence Rule does not preclude Marshall's testimony about the note she allegedly wrote. The Best Evidence Rule, Fed. R. Evid. 1002, provides that "[a]n original writing…is required in order to prove its content unless these rules or a federal statute provides otherwise." In support of its contention that testimony about the note must be excluded, Rawlings cites to an unpublished decision from the Northern District of Ohio. *See Pearson v. FirstEnergy Corp. Pension Plan*, No. 5:14-cv-634, 2016 WL 471859, at *14 n.15 (N.D. Ohio Feb. 8, 2016). There, the plaintiff testified at his deposition that he received a letter from defendant "in which he was informed that he was eligible for an unreduced pension at age

60 because he had 10 or more years of service at the time of separation." *Id.* However, the court there found that the plaintiff's deposition testimony, standing alone and without the original letter or a copy thereof, was insufficient to create a genuine dispute of material fact. *Id.* The court then granted summary judgment in favor of the defendant.

This case is different from *Pearson* in two important ways. First, *Pearson* was in the summary judgment phase, and the court was asking the question of whether the plaintiff's self-serving testimony at his deposition regarding the existence of a letter he could not produce could create a genuine dispute of material fact. Conversely, in this case, the Court deals with the admissibility of testimony at trial in response to a motion in limine. The Court passes no judgment on the small or large impact Marshall's testimony about the note could have, or how credible it is, or whether it would create a genuine dispute of material fact in the mind of a jury. Rather, the Court will merely allow Marshall to testify about it at trial. Second, the document at issue in *Pearson* was not drafted by the plaintiff, but rather, the plaintiff contended that the defendant had drafted it and sent it to him. Here, Marshall allegedly drafted the note herself. Consequently, to the extent that it exists, Marshall possesses personal knowledge of the note, how and when it was drafted, its contents, and whether she brought it to the meeting in question. *See* Fed. R. Evid. 602. Whether or not the jury believes Marshall wrote the note, brought it to the meeting, gave it to Plumley, or lost it is a matter of credibility for the jury to determine, and not for the Court to do so in limine.

### XI. Motion in Limine to Exclude Marshall's Deposition Exhibit 23

The next Motion is Rawlings' Motion in Limine to exclude from trial Exhibit 23 introduced during Marshall's deposition. [DN 52.] Exhibit 23 is, according to Rawlings' instant Motion, a two-page email Marshall sent to herself on September 30, 2013. [DN 52-1, at 1.] The

email, apparently prepared by Marshall in anticipation of her meeting with Plumley, contains three parts: the first is a list of notes she compiled and wished to talk about with Plumley at the meeting; the second part is a bullet-pointed list compiled from research Marshall conducted on workplace bullying; the third part of the email is a copied-and-pasted email to her from her brother, Tony, in which he gave her encouragement regarding her meeting with Plumley. [*Id.* at 1-2. *See also* DN 63, at 1.] Rawlings argues that the document should be excluded on three bases: first, the email is irrelevant; second, it would cause unfair prejudice to Rawlings; and third, the email constitutes hearsay.

Regarding the first section of the Exhibit, Marshall's notes concerning alleged incidents in the Rawlings workplace, this information must be excluded as unfairly prejudicial. Although Rawlings makes the primary argument that the information is irrelevant, the Court finds that it passes the low threshold presented by Fed. R. Evid. 401. However, with this in mind, exclusion is still warranted under Fed. R. Evid. 403 due to the information's prejudicial nature. Here, the potential for prejudice to Rawlings stemming from the presentation of a numbered list of events which allegedly took place during the course of her employment with Rawlings is twofold: first, the risk of prejudicing Rawlings is great under the circumstances, especially when weighed against the probative value of the list of which Marshall presumably has personal knowledge anyway; second, the contextless nature of the list runs the risk of both confusing and misleading the jury.

For example, number "3" on the list provides, in its entirety, as follows: "Using the 'silent treatment' to 'ice out' and separate from others." [DN 111-1, at 2.] This statement does not provide who used the silent treatment, to whom it was used, when such treatment was inflicted, where it was inflicted, or any other information concerning the context of the situation.

As another example, number "7" provides as follows: "Yelling, screaming, and throwing tantrums in front of others to humiliate a person." [*Id.*] Similarly, there is no information provided indicating who yelled, who screamed, who threw a tantrum, whether this was all done by one person or many people, how often this occurred, when it occurred, at whom the tantrum or tantrums were directed, or any other information concerning the context of the situation. There are ten statements like this contained in the numbered list, and while each point concerns different behaviors and situations, in none of them does Marshall identify the perpetrators of the behavior, nor does she clarify if she was the victim of this behavior. In short, this type of confusing information could muddle the issues of the case. Moreover, the presentation of this information could mislead the jury into thinking, without having been provided context, that these situations contributed to her termination, or that somehow Marshall's presentation of this information to her bosses caused her termination (which there is no proof of). In the Court's view, this part of the email must be excluded, as its probative value is substantially outweighed by the danger of unfair prejudice to Rawlings.

Next, with respect to the second portion of the Exhibit, the Court will exclude the bullet-pointed list of research allegedly conducted by Marshall in anticipation of the September 30, 2013 meeting on the grounds of irrelevance. [*See* DN 111-1, at 2-3.] This includes the four "Goals" listed after the bullet-pointed material. [*See id.* at 3.] While the bar presented by Fed. R. Evid. 401 is a low one, the Court cannot see how generalized research on workplace bullying compiled by Marshall and which does not pertain directly to the actual facts and allegations of this case would be relevant here. The Court has reviewed the information, and has determined that it is not "of consequence in determining the action," as required by Fed. R. Evid. 401. In her Response, Marshall does not point out where this information came from, whether she cut and

pasted it from a website or book, or typed it out in her own words, or how it relates to the case. [*See* DN 63.] Indeed, in her Response, Marshall simply reiterates the position that she "made some notes to prepare herself for her meeting with Laura Plumley," which "concerned…workplace bullying…." [*Id.* at 1.] Marshall then states in conclusory fashion that "[i]t's probative: its documentary evidence showing Marshall's state of mind and points she wants to make going into a meeting about her job…it's related to her claims of harassment and retaliation." [*Id.* at 1-2.] Marshall makes no specific points addressing this information pertaining to workplace bullying. It must be excluded. Even if the information pertaining generally to workplace bullying was relevant under Fed. R. Evid. 401, it should still be excluded under Fed. R. Evid. 403, due to the danger of presenting it to a jury, which could be misled by the information. Specifically, there is no certifying information concerning from whence this information came, nor has Marshall proclaimed herself to be an expert on the issue. Moreover, such generalized statements do not provide much probative value to the case, whereas the danger of their presentation to the jury is quite great. In short, this information may not be introduced as an exhibit.

Finally, there is the issue of Marshall's brother Tony's email to her. This, too, must be excluded. In the Court's view, the email is irrelevant. The email, in its entirety, is as follows [sic throughout]:

> Hola. I heard you have a meeting today at work re a work environment concern. Stay positive and constructive during the meeting but also express your concerns. They key is to show/convey you are there to improve yourself and the organization the best you can. Discussing concerns is a positive thing but try to be constructive :). Love. Tony

[DN 111-1, at 3.] The Court finds that the only piece of the email which pertains to the case at all is Tony's statement that "I heard you have a meeting today at work re a *work environment*

*concern*." [*Id.* (emphasis added).] However, the fact that Marshall met with Plumley on September 30, 2013 will be brought up by Marshall herself, as well as, presumably, numerous other witnesses, as it is common knowledge, and it immediately preceded her termination. But secondhand knowledge from Marshall's brother who, insofar as the Court is aware, is not and never has been affiliated with Rawlings, that she had a meeting is not "of consequence in determining the action." *See* Fed. R. Evid. 401. Moreover, even if the email passed the low threshold presented by Fed. R. Evid. 401, the danger presented by the email of confusing the issues and misleading the jury warrants its exclusion, especially when weighed against the considerably low probative value of the email. Of course, if the fact of the meeting, or its topic, is brought into question throughout the course of the trial, counsel may request to approach the bench to discuss the admissibility of the email at that time. However, in the interim period, the Court will order its exclusion.

### XII. Motion in Limine to Exclude Michael Elsner's Deposition Exhibits 13 and 28

The next Motion at issue is Rawlings' Motion in Limine to exclude Michael Elsner's deposition Exhibits 13 and 28. [DN 53.] Exhibit 13 is entitled "Privacy Policy Violation Notice – Formal Written Warning with Monetary Penalty," and is dated July 5, 2012. [DN 111-2, at 2.] The body of the one-page document provides as follows:

> Analyst sent claims itemization to one of the member's providers, a hospital. That itemization included the claims for that provider as well as another provider, a medical group. The two providers are located in the same building, share information internally, if needed, and request medical records from the same facility…Analyst has had management counseling specific to this incident including the need to verify information before disclosing PHI. He [sic] will attend formal HIPAA retraining and be disciplined in accordance with Rawlings policies…Lack of immediate and sustained improvement will result in further disciplinary action, up to and including termination.

[*Id.*] The Exhibit is, in essence, a notation documenting a disciplinary violation by Marshall on July 5, 2012, which she was required to sign. [*Id.*] Similarly, Exhibit 28 from Elsner's deposition is also a Privacy Policy Violation Notice, this one from April 10, 2013. [*Id.* at 3.] In the second disciplinary violation, Marshall apparently "mailed to an attorney correspondence containing personal health information without first confirming the attorney's representation of the member." [*Id.*] Rawlings now seeks to have both of these disciplinary violation documents excluded from trial. In support of this, Rawlings argues that the violations are (1) irrelevant, (2) if relevant, unfairly prejudicial, and (3) hearsay. [*See* DN 53.] Marshall's first stint of FMLA leave was from February 7, 2012 to March 13, 2012. Her second stint of FMLA leave was from March 18, 2013 to March 29, 2013. In addition, she took intermittent FMLA leave due to mental health issues from April 2013 to August 2013. After having reviewed the submissions, the Court will deny Rawlings' Motion at this time.

The exhibits are relevant. They document Marshall's employment history at Rawlings and, more specifically, disciplinary incidents involving her work. As this case centers around Marshall's demotion and eventual termination, and the propriety of those decisions, her workplace infractions while still employed by Rawlings certainly have a "tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. The exhibits are also not unfairly prejudicial to Rawlings. The basis for Rawlings' argument that the introduction of these two disciplinary infractions would be unfairly prejudicial centers around its contention that the infractions were not taken into account when the decision was made to terminate Marshall's employment at the company. [*See* DN 53-1, at 4.] In its view, "[t]he jury should not be permitted to assign weight to the [infractions], when Rawlings attributed none to them during the decision-making process." [*Id.*] The Court is not of the opinion that, because

Rawlings has contended that the infractions did not play a role in Marshall's termination should, in and of itself, preclude Marshall being permitted to present these exhibits. Disciplinary infractions levied against an employee prior to termination constitute highly probative evidence in these types of cases and, as Marshall explained in her Response, she may wish to use these exhibits as evidence of continued harassment after she took FMLA leave. [*See* DN 67, at 2.] In short, while the infractions may not have played a role in the ultimate decision-making process undertaken by Rawlings, this case is about more than that decision, and the Court expects a great deal of evidence to be introduced at trial relating not only to her demotion and termination, but also the course of her employment at Rawlings leading up to those two moments, of which the infractions are certainly two such instances.

Finally, the Court finds that the exhibits are not hearsay. The definition of hearsay is laid out in more detail above. One of the more well-known exceptions to the rule against hearsay is the business records exception. *See* Fed. R. Evid. 803(6). "Business records are properly admitted under the business records exception to the hearsay rule if they satisfy four requirements," regardless of whether the declarant is available for trial:

> (1) They must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the [documents]; and (4) the [documents] must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tennessee Dept. of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009) (citing *Redken Labs., Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir. 1988)). The only foundation requirement for the introduction of a business record "is that the 'witness be familiar with the record keeping system.'" *United States v. Laster*, 258 F.3d 525, 529 (6th Cir. 2001) (quoting *United States v. Hathaway*, 798 F.2d 902 (6th Cir. 1986)).

In the Court's view, these two disciplinary infractions fit squarely within what is contemplated as the "business records exception." First, the infraction forms appear to "have been made in the course of regularly conducted business activities," that is, a seemingly organized manner and practice of disciplining employees for conduct contrary to company rules. This is evidenced by the pre-made form entitled "Privacy Policy Violation Notice – Formal Written Warning with Monetary Penalty." [*See* DN 111-2.] The document is obviously a pre-arranged form with spaces to fill in the employee's name, job title, department, the date of the occurrence and the date of the completion of the form, as well as places for a description of the incident, a plan for improvement and consequences for further infractions, among other information. [*See id.*] Indeed, the document is quite formal, and provides places for the signatures of the offending employee, a Human Resources representative and, if necessary, a witness. [*See id.*]

Second, the nature of the disciplinary infraction form is such that the Court views it as one "kept in the regular course of business." *See Cobbins*, 566 F.3d at 588. Indeed, that appears to be the whole purpose of the form: to make official note of an infraction, create a plan for improvement, and make note of what consequences will result if the employee does not correct their behavior. [*See* DN 111-2.] Documenting all of this information would serve to inform Human Resources down the road should another issue present itself. Third, the fact that the form is pre-arranged and only requires filling in the requested-for information indicates to this Court that the regular practice of Rawlings was to fill out this document, so as to better document these issues. Finally, that a Human Resources employee signed the infraction, which is complete with a detailed description of all underlying events, shows that the document was created "by a person with knowledge of the [issue]" or, at the very least, was created "from information transmitted

by a person with knowledge" of the underlying infraction. *See Cobbins*, 566 F.3d at 588. Thus, the two exhibits satisfy the business records exception to the rule against hearsay and may be admitted at trial. If Rawlings believes a proper foundation was not made at trial, or if Rawlings finds reason to dispute any of the four above-referenced elements encompassing the business records exception as delineated in *Cobbins*, 566 F.3d at 588, to contest admissibility, it may present such arguments to the Court at trial by requesting to approach the bench.

## XIII. Motion in Limine to Exclude All Proof of Marshall's Damages

### A.

The next Motion is Rawlings' Motion in Limine to exclude all proof of Marshall's damages because, according to Rawlings, Marshall "failed to even attempt compliance with the disclosure requirements of Fed. R. Civ. P. 26 and Fed. R. Civ. P. 33." [DN 109.]

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), parties to litigation are required to disclose, without request, the following information:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered….

Relatedly, Rule 37(c)(1) "requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. Jun. 25, 1999)). The burden of proving harmlessness is "on the potentially sanctioned party." *Id.* (citations omitted).

In her initial disclosures, filed with the Court on September 24, 2014, Marshall provided the following information with respect to damages:

Although the exact measure of damages will need to be recalculated once discovery is completed and documents requested therein produced, claimed by the Plaintiff include:

[1] Approximate Back Pay for time lost beginning on October 2, the day following Plaintiff's last day of employment with Defendant.

[2] Approximate Front Pay for the period of time that Plaintiff would have remained employed, absent being discriminatorily terminated.

[3] A yet unspecified sum for loss of additional benefits that may have been due as the result of No. 1 above.

[4] A yet unspecified sum for emotional pain, physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Also, an award of Plaintiff's attorneys' fees and costs.

[DN 16, at 4.] Of course, noticeably absent from the above-quoted language are any numerical figures or mathematical calculations relating to the sum of the damages sought.

Later, in April 2015, in response to an interrogatory from Rawlings, Marshall again failed to provide numerical values as to any of her claimed damages, providing instead similar answers to that of her initial disclosures, outlined above. There is a small amount of new information though, and which bears laying out at this time. Her response to the interrogatory was as follows:

Damages, although the exact measure of damages will need to be recalculated once discovery is completed and documents requested therein produced, claimed by the Plaintiff include:

[1] Approximate Back Pay for the amount of pay she lost for the period from October 1, 2013 to when she obtained new employment on April 28, 2014 following her discriminatory and retaliatory discharge.

[2] Approximate Back Pay for the difference in gross income between Plaintiff's employment at Defendant Rawlings and her new job from the period of April 28, 2014 to the present.

[3] A yet unspecified sum for loss of additional benefits that may have been due as the result of No. 1 and 2 above.

[4] An award of Plaintiff's attorneys' fees and costs which continue to accumulate and are thus, undetermined at this time.

[DN 109-2, at 4.] Rawlings further argues that, in a second set of interrogatories submitted to Marshall in November 14, 2017, no additional information was provided by Marshall with respect to her claims for damages. [*See* DN 109-1, at 3; DN 109-3.]

Moreover, Rawlings contends that these answers have not been supplemented with any numerical values or calculations for any such figures. [*See* DN 109-1, at 3.] However, Rawlings does concede that, in a pre-settlement conference email in September 2017, Marshall included the following language: "Wages – Back pay (4 years) - $180k, Front pay (3 years) - $150k[;] Emotional distress[;] Punitive damages[;] We estimate attorneys' fees through trial at approximately $100k." [*Id.* at n.1.] In other words, Marshall apparently provided a total sum for lost wages, both for back pay and front pay, but did not provide a break-down of how those figures were reached, or supporting documentation; nor did she provide any numerical value for emotional distress or punitive damages; she did provide a total figure for attorney fees but, again, did not provide a break-down or supporting documentation for the $100,000 figure.

In her Response, Marshall argues that "[s]he provided evidence of her salary and incentive pay as Team Lead with Rawlings before her demotion. She did the same after demotion until she was fired a year later. Frankly, Rawlings has her payroll records and W-2 forms…." [DN 128, at 1.] Marshall also notes that "Rawlings unsuccessfully opposed her unemployment claim, so it knows what she drew in weekly benefits." [*Id.* at 2.] Moreover, "Rawlings' counsel took Marshall's deposition at length over a two (2) day period…[and] [s]he asked her a number of questions about efforts to seek further employment, success in gaining

employment, and interim earnings." [*Id.*] Lastly, "[w]hen Marshall moved on to a second job, she supplemented her answers as an update, in writing." [*Id.*]

**B.**

It appears clear to the Court that Marshall has provided *some* indication of the damages she seeks; it is also very plain that Rawlings would have preferred much more detailed responses and information pertaining to the damages sought and that Marshall could have been more thorough in providing it. However, the ultimate question is whether, in light of the above correspondence and disclosures, Marshall should be foreclosed from presenting any evidence of her damages at trial. For the following reasons, the Court declines Rawlings' invitation to issue such an order.

First, it is undisputed that Rawlings was apprised early on of the kind of damages Marshall is seeking in this case: lost wages (back pay and front pay), emotional distress damages, punitive damages, and attorney fees. [*See* DN 1, at 6; DN 16, at 4.] "Moreover, the defendant[], as [Marshall's] employer, has access to [her] personnel file and could therefore have made a reasonable calculation of these categories of damages," at least with respect to lost wages. *See Conn v. Deskins*, No. 16-87-ART, 2017 WL 1738084, at *2 (E.D. Ky. Mar. 7, 2017) (citing *Lucterhand v. Granite Microsystems, Inc.*, No. 05-cv-1047, 2007 WL 703400, at *17-18 (E.D. Wisc. Mar. 2, 2007); *cf. FDIC v. Thornton*, 595 F. App'x 513, 523 (6th Cir. 2014); and *Vitek v. AIG Life Ins. Brokerage*, No. 06-cv-615, 2008 WL 437 2670, at *6 (S.D. Ohio Sept. 22, 2008)). In *Conn*, the District Court for the Eastern District of Kentucky allowed the plaintiff to introduce evidence of lost wages in a situation bearing a striking resemblance to this case. There, defendants had notice that the plaintiff and former employee intended to pursue claims of lost wages by virtue of his initial disclosures and, as his former employer, could make a reasonable

determination of how much. *Id.* Similarly, in this case, Rawlings is Marshall's former employer, was apprised of her intent to seek lost wages in her Complaint, her initial disclosures, her responses to interrogatories, and the September 2017 email. In short, while Marshall's responses were themselves less than stellar, she provided sufficient information with respect to her intent to seek lost wages that this Court will not foreclose her opportunity to present evidence on such damages at trial.

Additionally, in *Conn*, the district court held that the plaintiff could not put on evidence of front pay damages due to the fact that he "did not mention front pay in his initial disclosures or in his response to Interrogatory No. 22; as a result, the defendants were not on notice of this category of damages until a couple days before trial." *Id.* The court contrasted this with his other lost wages claims, of which the defendants were apprised, and of which the plaintiff was permitted to put on evidence. Conversely, in this case, Marshall made known her intent to seek front pay in her initial disclosures. [*See* DN 16, at 4 (stating that she was seeking "[a]pproximate Front Pay for the period of time that Plaintiff would have remained employed, absent being discriminatorily terminated").] Moreover, in the September 2017 email, Marshall again stated her intention to seek damages in the form of front pay, noting the number of years (three) and the total amount sought ($150,000). [*See* DN 109-1, at 3 n.1.] Again, while Marshall could have provided more information, including a computation relating to how she reached the $150,000 figure, the Court finds that she provided sufficient information to her former employer from which Rawlings could have made reasonable calculations.

This Court's sister court in *Conn* also addressed the issue of emotional distress and punitive damages. It noted that the plaintiff "fail[ed] to disclose a computation of his emotional distress and punitive damages" before trial, but that it "was substantially justified or harmless

given the difficulty that comes with trying to calculate these amorphous categories of damages before trial." *Conn*, 2017 WL 1738084, at *3 (citing *Scheel v. Harris*, No. 3:11-cv-17-DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012); *Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2014 WL 5089429, at *4 (S.D. Ohio Oct. 9, 2014); *Biesty v. Knuckles*, No. 5:15-cv-23-KKC, 2016 WL 4120632, at *3-4 (E.D. Ky. Aug. 1, 2016); and *Carver v. Petry*, No. 12-cv-131-JMH, 2013 WL 160277, at *2 (E.D. Ky. Jan. 15, 2013)). Here, too, the Court finds that Marshall's failure to provide computations with respect to her emotional distress and punitive damages claims is substantially justified or harmless and, accordingly, will deny Rawlings' Motion on this front as well.

However, even having denied Rawlings' Motion here, the Court acknowledges the fact that Marshall could have been much more comprehensive in breaking down the individual figures from which she drew the totals in the September 2017 email. Given this, **the Court will order Marshall to provide to Rawlings a more in-depth document showing calculations, to the extent that they exist, for the damages she seeks no later than two weeks before trial**.

### XIV. Motion in Limine to Exclude Marshall's Proposed Witnesses Adrienne Popeck, Blair Hand, and Kristen Miracle

The next Motion at issue is Rawlings' Motion in Limine to exclude from trial three of Marshall's potential witnesses: Adrienne Popeck ("Popeck"), Blair Hand ("Hand"), and Kristen Miracle ("Miracle"). [DN 112.] In support of this Motion, Rawlings argues that Marshall never disclosed the identities of Popeck, Hand, or Miracle, either through initial disclosures, written discovery responses, or during her own deposition and, consequently, Rule 37(c)(1) requires the exclusion of their testimony from trial. [*See id.* at 1.] Moreover, Rawlings argues that, even if Rule 37(c)(1) does not mandate the exclusion of this testimony, to permit them to testify would contravene Fed. R. Evid. 402 and 403 and they must be excluded.

This case's history with respect to the disclosure of the aforementioned three individuals appears, from the record, to be as follows: initial disclosures were made by Marshall pursuant to Rule 26(a) on September 24, 2014. [DN 16.] Therein, Marshall did not name Popeck, Hand, or Miracle specifically, but rather, stated "[a]ll present and former employees of the Defendant, not named above, whose names appear in any documents produced by any party." [*Id.* at 2.] Later, in April 2015, Rawlings served Marshall with interrogatories, two of which dealt with the identities of persons "with whom you [Marshall] or your attorney have had contact, discussions, correspondence, or other communications regarding claim[s] in this action" and persons "who you believe or alleged perpetrated, witnessed or may have witnessed the conduct forming the basis of any of the allegations in the Complaint." [*See* DN 112-1, at 3.] In response, Marshall did not specifically name Popeck, Hand, or Miracle. [*Id.*] However, Marshall did include Miracle in her proposed witness list in anticipation of the first trial date, filed with the Court on March 17, 2016, [DN 57], and named Popeck in her supplemental witness list filed on March 24, 2016. [DN 72.] Eventually, Marshall disclosed Hand in a filing styled as another supplemental witness list, dated October 18, 2017, [DN 98], roughly two years after the close of discovery.

In the instant Motion, Rawlings correctly points out that disclosure under Rule 26(a) is mandatory and, relatedly, exclusion for failure to comply is also mandatory under Rule 37(c)(1), absent harmlessness or substantial justification for nondisclosure. By the docket, the discovery deadline was amended multiple times, but the most recent amendment put that date at September 30, 2015. [DN 27.] Thereafter, Rawlings filed a Motion for Summary Judgment on November 16, 2015. [DN 34.] While this Motion was pending, the original trial date crept closer, and the parties began to prepare for trial. As part of these preparations, the parties filed exhibit and witness lists with the Court, proposed jury instructions and voire dire questions, as well as their

trial briefs. [*See* DNs 42, 43, 54-61.] Additionally, Rawlings lodged a timely objection with the Court concerning Marshall's witness list, [DN 57], and her supplemental witness list. [DN 72.] In the former, Marshall listed Miracle, and in the latter, she listed Popeck. According to Rawlings' objection thereto, [DN 84], neither Miracle nor Popeck were listed in Marshall's Rule 26(a)(1) disclosures, nor were they mentioned by name in written discovery responses or during Marshall's own deposition. [*See id.* at 1.] Because of this, Rawlings argued, Rule 37(c) mandated the exclusion of these two witnesses' testimony from trial. [*Id.*] In response, Marshall presented two arguments: first, as both Miracle and Popeck previously worked for Rawlings, the company was familiar with them and their history; second, she argued that she complied with Rule 26(a)(3)(A)'s 30-day window and, therefore, the disclosure of these two individuals was timely.

Rule 26(a)(3)(A) "requires each party, as a part of its pretrial disclosures, to provide the name of each witness, including those the party expects to present and those it may call if the need arises, unless the witness is offered solely for impeachment." *Clements v. Prudential Protective Servs., LLC*, 659 F. App'x 820, 822-23 (6th Cir. 2016) (internal citations omitted). And under Rule 26(a)(3)(B), the relevant timeframe, "[u]nless the court orders otherwise," is "at least 30 days before trial." Based upon the language of Rule 26(a)(3), Marshall fulfilled her obligation under the rule. However, as Rawlings correctly pointed out in its Reply to the instant Motion, Rule 26(a)(3) does not supplant, or otherwise supersede Rule 26(a)(1) and a party's obligation to comply therewith. [*See* DN 140, at 3-4 (citing *Thomas v. McDowell*, No. 2:10-cv-152, 2014 WL 5305501, at *4-5 (S.D. Ohio Oct. 15, 2014) for the proposition that "Rule 26(a)(3)'s disclosure obligation is separate and distinct from Rule 26(e)(1)(A)'s obligation to supplement discovery responses in a timely manner.").] *See also Poitra v. Sch. Dist. No. 1 in the Cnty. Of Denver*, 311 F.R.D. 659, 668 n.10 (D. Colo. 2015) ("Rule 26(a)(3) makes clear by its

very terms, that the disclosure of a final witness on the eve of trial, is not a substitute for initial disclosures, but rather is in addition to the disclosures required by Rule 26(a)(1) and (2)") (internal citations omitted); *see also De La Torre v. Merck Enters., Inc.*, 540 F. Supp. 2d 1066, 1076 n.8 (D. Ariz. 2008) ("Plaintiff's counsel should know and is required to know that initial disclosures are not the same as pretrial disclosures."). Consequently, that Marshall named Miracle and Popeck in her pretrial disclosures under Rule 26(a)(3) did not excuse her failure to name them in her Rule 26(a)(1) disclosures, or any supplements thereto.

Before the final pretrial conference concerning the original trial date in April 2016, this Court granted summary judgment in favor of Rawlings. Marshall filed a timely appeal, and this Court's decision was reversed in part and remanded for further proceedings. [DNs 90, 91.] Upon remand, this Court gave no order to reopen discovery in this matter, although it appears that some minimal work was done in this area. Particularly, notices for the depositions of Mary Zriny and Dr. Mohamed Khodeir were filed with the Court. [*See* DNs 100, 105-06.] However, formal discovery was not reopened by the Court in this matter in the period before the trial, scheduled for March 26, 2018, and Rawlings only learned the identities of Miracle and Popeck a couple of weeks before summary judgment was originally granted by this Court in 2016. Thus, the Court cannot say that the inclusion of these individuals would be "harmless" to Rawlings, or that Marshall's failure to disclose them was "substantially justified" under the circumstances. *See Dickerson v. Cardiac and Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004).

Notably, as discussed above, the burden of proving harmlessness or substantial justification for the original nondisclosure rests with the party seeking to admit the witness or witnesses in question. *See Roberts ex rel. Johnson*, 325 F.3d at 782. This Marshall has not done.

The Sixth Circuit has noted "that commentary to Rule 37(c)(1) 'strongly suggests that a harmless violation involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Id.* at 783 (quoting *Vaughn v. City of Lebanon*, 18 F. App'x 252, 264 (6th Cir. 2003)) (internal citations omitted). Marshall does not argue that the omission of Miracle's name or Popeck's name from her initial disclosures, or the supplementations thereto, were honest mistakes and she does not show sufficient knowledge on the part of Rawlings. Rather, Marshall makes practical arguments. She indicates that, taking into account the March 2018 trial date, her disclosure of these names in March 2016 has not blindsided Rawlings nor left it unable to adequately defend itself. But even if this were the case, the fact remains that, at the time she made these disclosures, trial loomed less than one month away in April 2016, and formal discovery was never reopened by this Court upon remand. Moreover, theoretical arguments concerning exactly how surprised Rawlings should or should not have been concerning Marshall's decision to try to call Miracle and Popeck, both former employees of the company, do not dispense with the requirements under Rule 26(a)(1).

With respect to the third potential witness, the first mention Marshall made of Blair Hand was in her "Supplemental Witness List," filed with the Court on October 18, 2017. [DN 98.] This date was more than two years after the close of formal discovery (September 30, 2015), and no other mention of her name had been made up until that point. It cannot follow that Marshall is permitted to include Hand as a witness at trial. Finally, regarding all three potential witnesses, Marshall's other argument that she complied with Rule 26(a)(1) by stating " [a]ll present and former employees of the Defendant, not named above, whose names appear in any documents produced by any party," lacks merit. That list is obviously quite vague and all-encompassing, and likely includes dozens, if not hundreds, of current and former employees of the company.

**XV. Motion in Limine to Exclude Proof Regarding Popeck's and Hand's Lawsuits and Internal Harassment Complaints by Other Employees against Rawlings**

The next Motion at issue is Rawlings' Motion in Limine to exclude proof regarding Popeck's and Hand's lawsuits against Rawlings, as well as internal harassment complaints by other employees against the company. [DN 113.] Specifically, Rawlings argues that Marshall never worked with Popeck or Hand and, as a result, any information they could offer pertaining to their own lawsuits against Rawlings would be irrelevant. [DN 113-1, at 1.] As this Court has ruled that Miracle, Popeck, and Hand must be excluded as witnesses from Marshall's case-in-chief, this Motion has largely been rendered moot on this point. In the event that Marshall attempts to call one of these individuals as a rebuttal witness, or something of that nature, Rawlings may approach the bench at that time with any concerns it has regarding that witness's potential testimony to these issues.

However, there is the additional relief sought by Rawlings with respect to internal harassment complaints. Rawlings argues that, on September 18, 2017, Marshall sought information concerning internal harassment complaints filed against Rawlings by other employees of the company, but that Marshall "has no proof regarding the facts of these complaints or the validity of the complaints." [*Id.* at 2, 6.] In Rawlings' estimation, introduction of such evidence would contravene Fed. R. Evid. 401, 402, and 403. [*Id.*] However, the Court concurs with Marshall's framing of the situation. [*See* DN 130, at 4.] Rawlings does not point to any specific complaints, does not identify the individuals making the complaints, who the complaints were made against, or any other information concerning these complaints, nor has Rawlings given these complaints to Marshall at all. [*See id.*] As such, a ruling on the admissibility of any such complaints would be entirely speculative and premature. Should issues concerning any such harassment complaints arise at trial, Rawlings and Marshall may approach

the bench to discuss it further with the Court. Until such time, the Court will deny this portion of the Motion. The Court has some concerns as to the relevance of harassment claims filed against Rawlings and their similarities to the merits of this case. Marshall's claims are for FMLA retaliation and ADA discrimination. There is nothing in the record to show these other vague claims of harassment concern FLMA retaliation or ADA discrimination.

## XVI. Motion in Limine to Exclude Evidence Related to Marshall's Sexual Orientation and Past Sexual Abuse

The next Motion at issue is Marshall's Motion in Limine to exclude all evidence pertaining to her sexual orientation and any past sexual abuse. [DN 122.] Specifically, Marshall experienced relationship troubles with her partner during her time of employment at Rawlings, and also apparently suffered abuse as a child. [*Id.*] Marshall contends that Rawlings will likely attempt to introduce this evidence in an effort to show that her emotional distress was caused by these traumatic events and not by Rawlings' treatment of her in the workplace. [DN 122-1, at 2.] Marshall contends any such evidence is irrelevant under Fed. R. Evid. 401 and 402 and, alternatively, would be unfairly prejudicial under Fed. R. Evid. 403.

The Court will grant Marshall's Motion at this time. Depending upon the evidence admitted at trial, the witnesses called, and the testimony elicited from those witnesses, evidence concerning her relationship could become relevant or inevitably disclosed due to other evidence, as could the possible root causes of her PTSD, depression and anxiety. If Rawlings believes the trial has been taken in a direction which would lead to such evidence being relevant or inevitably disclosed, it may request to approach the bench and move to have such evidence admitted at that time. The Court notes that Marshall's initial FMLA leave was related to pre-existing depression, anxiety, bipolar disorder, and PTSD. Certain such evidence is intrinsic to the case. It appears that evidence of these pre-existing conditions can come in without relating them to sexual orientation.

## XVII. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. Rawlings' Motion in Limine to exclude other employees' alleged complaints about Jeff Bradshaw **[DN 44]** is **DENIED**. To aid the Court, **on or before March 9, 2018, each party shall file briefs identifying specific complaints and witnesses. Responses shall be filed by March 16, 2018, and no replies shall be filed.**

2. Rawlings' Motion in Limine to exclude all testimony or evidence about what Marshall's physicians told her, or any other individual, about Rawlings allegedly causing her emotional distress **[DN 45]** is **GRANTED.**

3. Rawlings' Motion in Limine to exclude comments by Doug Gurley, Chris Gardner, Elizabeth Davidson, and Leah Sarley **[DN 46]** is **GRANTED.**

4. Rawlings' Motion in Limine to exclude comments by Jeff Bradshaw **[DN 47]** is **DENIED**.

5. Rawlings' Motion in Limine to exclude alleged discussions about a performance improvement plan for Marshall **[DN 48]** is **DENIED.**

6. Rawlings' Motion in Limine to exclude comments allegedly made by other employees about Rawlings' attitude towards FMLA leave **[DN 49]** is **GRANTED** as to Elizabeth Davidson**.**

7. Rawlings' Motion in Limine to exclude Exhibit 27 to Marshall's Response, an email sent by Matt Monyhan concerning the Team Leader bonus **[DN 50]** is **DENIED.**

8. Rawlings' Motion in Limine to exclude any evidence about notes that Marshall allegedly gave Laura Plumley **[DN 51]** is **DENIED.**

9. Rawlings' Motion in Limine to exclude Marshall's deposition Exhibit 23 **[DN 52]** is **GRANTED.**

10. Rawlings' Motion in Limine to exclude Michael Elsner's deposition Exhibits 13 and 28 **[DN 53]** is **DENIED.**

11. Rawlings' Motion in Limine to exclude all proof of Marshall's damages **[DN 109]** is **DENIED. Marshall is HEREBY ORDERED to produce a more in-depth document concerning her damages calculations no later than two weeks before trial.**

12. Rawlings' Motion in Limine to exclude Marshall's proposed witnesses Adrienne Popeck, Blair Hand, and Kristen Miracle **[DN 112]** is **GRANTED.**

13. Rawlings' Motion in Limine to exclude proof about Popeck's and Hand's lawsuits and internal harassment complaints by other employees against Rawlings **[DN 113]** is **DISMISSED AS MOOT** with respect to Popeck and Hand, and **DENIED** as to the internal harassment complaints.

14. Marshall's Motion in Limine **[DN 122]** is **GRANTED.**

**IT IS SO ORDERED.**

cc:     Counsel of Record