UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-359-TBR

GLORIA MARSHALL,                                                       PLAINTIFF

v.

THE RAWLINGS CO., LLC,                                         DEFENDANT

**Memorandum Opinion & Order**

This matter comes before the Court upon two Motions. First, Defendant The Rawlings Company, LLC, ("Rawlings"), has filed a Motion to Disqualify Plaintiff's Counsel Jill Guarascio. [DN 137.] Second, Plaintiff Gloria Marshall has filed a Motion for Sanctions against Rawlings. [DN 139.] These matters are ripe for adjudication and their merits are discussed below.

**I. Factual Background**

Marshall was previously employed by Rawlings, where she worked as a Workers Compensation Analyst, beginning in 2006. In September 2011, Rawlings promoted Marshall to the position of Team Lead. She was eventually demoted from this position and, in the fall of 2013, she was terminated from the company. In the last couple of years she spent at Rawlings, Marshall took multiple stints of leave under the Family Medical Leave Act, ("FMLA"), due to depression, anxiety, and Post Traumatic Stress Disorder ("PTSD"). Marshall has also indicated that she suffers from bipolar disorder.[1] After her termination, she filed suit against Rawlings, and her current claims against the company are for FMLA retaliation and for discrimination under the Americans with Disabilities Act ("ADA"). [*See* DN 90.]

---

[1] The preceding facts were taken from this Court's previous Memorandum Opinion, docketed at DN 87, as well as Marshall's Amended Complaint, docketed at DN 19.

1

When Marshall filed her lawsuit against Rawlings on May 7, 2014, she retained as counsel Jill Guarascio and Chris Sanders. [DN 1, at 6.] Guarascio was previously employed by Rawlings as a subrogation attorney and associate general counsel. [DN 44, at 5-6.] From her law firm's website and the case docket, it appears that Guarascio began working at Rawlings sometime either in 2009 or 2010, and left the company in the summer of 2011. [*See* www.guarasciolawgroup.com/about-us/]. In an affidavit filed with Rawlings' Motion to Disqualify Guarascio, Joan O'Brien, the current Vice President of Human Resources at Rawlings, avers that Guarascio "was formerly employed as a subrogation analyst by Rawlings for over one year. She moved from an analyst positon with Rawlings to a team attorney position with Rawlings & Associates PLLC…law firm upon admission to the Kentucky bar." [DN 137-2, at 2.] O'Brien further avers that, "[i]n her capacity as a team attorney…, Ms. Guarascio had an attorney-client relationship with Rawlings." [*Id.*] As part of Guarascio's job there, "she was privy to, and gained proprietary knowledge of, Rawlings' internal subrogation practices and procedures," and "directly reported to Laura Plumley, who performed at least one annual performance evaluation for Ms. Guarascio." [*Id.* at 3.] O'Brien also avers that Guarascio "worked directly with Jeff Bradshaw on occasion to provide advice and counsel to the subrogation department on recovery issues," and that Guarascio "developed a professional relationship with both Ms. Plumley and Mr. Bradshaw." [*Id.*]

In May 2014 when this lawsuit was initially filed, Rawlings emailed Guarascio and Sanders to indicate their uneasiness with Guarascio representing a former Rawlings employee like Marshall:

> Rawlings is deeply concerned by Ms Guarascio's involvement as counsel, in light of her former work as a lawyer for Rawlings. We don't understand how she can avoid using confidential attorney client information in this case that she gained in

the course of her past work for Rawlings and urge you and her to reconsider her involvement in the case.

[DN 137-3, at 3.] That email was sent by Jeffrey Swann, an attorney at Rawlings & Associates, on May 8, 2014, one day after the lawsuit was filed. In response, Sanders noted that, "[a]s to Jill's [Guarascio] involvement, you know there's nothing wrong with her representing Ms. Marshall." [*Id.* at 2.]

No filing or motion was put before the Court in the nearly-four year history of this case regarding Rawlings' concerns over Guarascio's involvement in the case, or her representation of Marshall in this lawsuit. Now, six weeks before trial, Rawlings has moved to disqualify Guarascio as counsel in this matter. Guarascio responded to the Motion to Disqualify and, by way of further rebuttal, filed a Motion for Sanctions against Rawlings in relation to Rawlings' Motion to Disqualify her.

## II. Rawlings' Motion to Disqualify

The first Motion at issue is Rawlings' Motion to Disqualify Guarascio as counsel for Marshall. [DN 137.] In support of the Motion, Rawlings' principle argument is that "Guarascio has a past attorney-client relationship with Rawlings, the subject matter of…Guarascio's prior representation of Rawlings is substantially related to the subject matter of this lawsuit, and…Guarascio acquired confidential information through her representation of Rawlings." [DN 137, at 1.] This, Rawlings argues, mandates Guarascio's disqualification from this case. In her Response, Guarascio frames the Motion to Disqualify her as "a dilatory tactic to avoid trial." [DN 144, at 1.]

### A. Legal Standard

The district court is afforded discretion in deciding whether to disqualify an attorney upon motion by the opposing party's counsel. *See United States v. Dandy*, 998 F.2d 1344, 1349

(6th Cir. 1993) (reviewing a district court judge's decision not to recuse himself for abuse of discretion). When "[c]onfronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his [or her] choice." *Manning v. Waring, Cox, James, Sklar, and Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Keeping this in mind, the Sixth Circuit has enunciated a three-part test for courts to use in analyzing whether counsel should be disqualified in a given case. This three-part test is as follows: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citing *City of Cleveland v. Cleveland Elec. Illuminating*, 440 F. Supp. 193, 207 (N.D. Ohio 1976), *aff'd*, 573 F.2d 1310 (6th Cir. 1977), *cert. denied*, 435 U.S. 996 (1978)).

**B. Discussion**

The Court will deny Rawlings' Motion to Disqualify Guarascio. It is uncontested that, as an in-house lawyer for Rawlings, Guarascio assumed an attorney-client relationship with the company. In her Response to the instant Motion, Guarascio acknowledges that fact. [*See* DN 144, at 4 ("[y]es, as to the first prong, Guarascio was an attorney at Rawlings.").] Consequently, the first prong of the *Dana Corp.* test is satisfied. 900 F.2d at 889. However, the Court agrees with Guarascio that Rawlings' argument fails on the second prong of the test, because the Court finds no substantial relationship between the subject matter of Guarascio's previous legal relationship with Rawlings and her current representation of Marshall. *See id.*

The Sixth Circuit has expanded upon what exactly constitutes "substantially related" under the *Dana Corp.* test: "the court must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013). "'What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.'" *Id.* (quoting with approval *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)).

To the Court, the primary difference between Guarascio's representation of Rawlings as an in-house lawyer and her current representation of Marshall is that Guarascio was not an employment lawyer for Rawlings, nor is it contended that she was involved in any employment law-related lawsuits filed by the company or against the company by current or former employees while she worked there. In other words, the matter in which Guarascio currently represents Marshall, an employment law case relating to the FMLA and the ADA, does not bear a substantial relationship to her previous representation of Rawlings as a subrogation attorney, work that ended roughly three years before she began representing Marshall.

Among other cases, Rawlings cites to *Harper v. Everson*, No. 3:15-cv-575, 2016 WL 9149652 (W.D. Ky. May 5, 2016), discussing the case at length as support for its argument that Guarascio should be disqualified. In *Harper*, the district court approved of the magistrate judge's decision to disqualify two attorneys from the case due to a conflict of interest. *Id.* Specifically, two attorneys from the law firm that represented the defendant resigned their posts and accepted

positions at the law firm that represented the plaintiff. *Id.* at *1. Obviously, this presented to the court a clear case of a conflict of interest based upon the two attorneys' previous representation of the defendant. And there, it was not a question of whether the subject matter of the two representations were "substantially related," for it was the same case and exactly the same representation. To deny the defendant's motion to disqualify there would have been to approve of attorneys switching sides in the middle of a lawsuit and representing an adverse party. Clearly, the rules and case law prohibit such action. However, that is a far cry from this case.

First, nearly three years passed between Guarascio's resignation from Rawlings and the commencement of her representation of Marshall in the instant lawsuit. Second, the subject matter of her representation of Rawlings and that of her representation of Marshall are not the same. As noted above, Marshall's case centers around her use of FMLA leave, and her subsequent demotion and termination, which she contends violated both the FMLA and the ADA. Conversely, Guarascio worked in subrogation with insurance issues, and not in the human resources department. Third, and perhaps most importantly, no evidence has been brought to the Court's attention that Guarascio ever worked on Rawlings' defense in this case or in any other FMLA or ADA-related case. Indeed, outside counsel was hired to represent Rawlings in this matter and there is no contention that Guarascio ever worked for this law firm (Stites & Harbison); nor is there any contention that, while employed by Rawlings, Guarascio specialized in employment law-related matters, gave legal assistance or advice in the employment law realm, or worked at all in the areas of FMLA or ADA issues with respect to Rawlings employees. Rawlings highlights the fact that one of the two attorneys who changed law firms in *Harper* did minimal work on the case and was still disqualified, but the fact remains that he was still a

member of the firm *at the time* of its representation of the defendant. The *Harper* case bears little resemblance to the core facts of this case.

Rawlings also argues that the second prong of the *Dana Corp.* test is satisfied due to the fact that Guarascio allegedly worked in close contact with individuals who are involved, either directly or tangentially, in this lawsuit; individuals like Jeff Bradshaw, the Vice President of the Subrogation and Workers Compensation division; Laura Plumley, the President of the Subrogation and Workers Compensation division; and Michael Elsner, the Director for the Workers Compensation division. [*See* DN 137-1.] In support of this argument, Rawlings points to two things: first, because Guarascio allegedly worked closely with these particular individuals, her subsequent representation of Marshall has been rendered "substantially related" to her representation or Rawlings; and second, Marshall's newfound reliance upon the Cat's Paw theory of liability, which in Rawlings' estimation was only really brought to light after the Sixth Circuit Court of Appeals remanded this case in April 2017, has made Bradshaw, Plumley and Elsner more important, thereby highlighting Guarascio's alleged conflict of interest.

First, with respect to Guarascio having worked with Bradshaw, Plumley and Elsner, that fact alone cannot, in and of itself, warrant Guarascio's disqualification. If that were the case, a new rule would necessarily need to be announced whereby no attorney could represent a client against their former employer, no matter how attenuated the circumstances. And although Rawlings points to the alleged closeness of the working relationship shared by Guarascio and these three individuals, the Court is not convinced. This is because, as explained above, to the extent that she communicated and advised Bradshaw, Plumley, and/or Elsner, it was allegedly with respect to subrogation and insurance issues, not FMLA, ADA, or human resources issues, which is the whole crux of the case currently before the Court. The Court is cognizant of the fact

7

that part of Rawlings' overall argument is that, regardless of the closeness of the relationship between the subject matter of Guarascio's employment at Rawlings and that of the current case, she still had the kind of access to the company's internal policies only made available to employees. However, the same holds true of most lawyers previous employed as in-house counsel for companies all across the country, thus diminishing this argument.

Second, with respect to Marshall's newfound reliance upon the Cat's Paw theory of liability, this argument must fail as well. The Sixth Circuit reversed this Court in part nearly eleven months ago and, in doing so, pointed to the Cat's Paw theory of liability. Consequently, Rawlings has been on notice that this theory will likely make up Marshall's central argument at trial at least since that time, but failed to raise the argument in the context of disqualifying Guarascio until February 16, 2018, roughly six weeks before trial. [*See* DN 137.] Rawlings argues that, because the Cat's Paw theory rests more heavily on Marshall producing evidence of wrongdoing on the part of actors such as Bradshaw and Elsner, their importance has suddenly skyrocketed to the forefront of the case. [DN 137-1, at 3.] Contrary to this assertion, though, is the fact that Bradshaw and Elsner have been central players since the inception of this lawsuit in May 2014. The Court notes that it addressed the Cat's Paw theory of liability in its Memorandum Opinion filed April 7, 2016. [DN 87.] In addition, Marshall argued the Cat's Paw theory in her Response brief to Rawlings' Motion for Summary Judgment, which she filed with the Court on December 21, 2015. [DN 37.]

Further, both men were mentioned in Marshall's original Complaint, filed on May 7, 2014. [DN 1, at 2-3.] Therein, Marshall made explicit allegations against them, including: "Bradshaw singled her out for harassment and questioned her in front of her peers about morale at a department luncheon in May 2013. On another occasion, in August 2012, he belittled her for

taking medical leave by sarcastically asking her whether she planned to take leave again." [*Id.* at 3.] Similarly, Marshall made specific allegations about Elsner's treatment of her with respect to her taking FMLA leave. [*See id.* at 3-4.] Plumley, too, was mentioned in the original Complaint. [*Id.* at 4.] In short, any argument that the importance of Bradshaw, Elsner and Plumley as witnesses was suddenly catapulted into the spotlight solely based upon Marshall's supposed new reliance on the Cat's Paw theory of liability must fail, for their parts in this lawsuit have been well known for nearly four years.

In sum, the Court finds the subject matter of Guarascio's previous legal relationship with Rawlings to be sufficiently different from her current legal representation of Marshall so as to fail the "substantially related" prong of the *Dana Corp.* test, thereby requiring the denial of Rawlings' instant Motion. Because the Court finds that the Motion fails on prong two, it need not address the merits of Rawlings' argument as to prong three. [*See* DN 137-1, at 13-14.]

### III. Marshall's Motion for Sanctions

The second Motion at issue is Marshall's Motion for Sanctions against Rawlings, [DN 139], filed in response to Rawlings' decision to file the above Motion to Disqualify Guarascio. In essence, Marshall moves to have Rawlings sanctioned because, according to Marshall, Rawlings waited until "the eve of trial" to file the Motion to Disqualify her, a Motion which Marshall argues "has no reasonable basis in fact, was not made in good faith and was filed with the improper purpose of harassing Plaintiff, causing unnecessary delay in the resolution of outstanding issues to be ruled upon by this Court…, and needlessly increasing Plaintiff's cost of litigating her claims…." [DN 139, at 1.] This, Marshall argues, contravenes Fed. R. Civ. P. 11(b)(1) and (b)(3), thereby rendering sanctions appropriate.

### A. Legal Standard

Rule 11 of the Federal Rules of Civil Procedure requires an attorney to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "a pleading, written motion, or other paper" (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" that (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and" that (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). *See also Grider Drug, LLC v. Express Scripts, Inc.*, No. 1:09-cv-95, 2010 WL 1253066, at *3 (W.D. Ky. Mar. 25, 2010). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1). Importantly, any sanction imposed by the Court "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Court's discretion includes the ability to enter "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Pursuant to *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002), "the test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." (citations omitted). "A good faith belief in the merits of a case is insufficient to avoid sanctions." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). Crucially,

the Sixth Circuit "has expressly ruled that Rule 11 is unavailable where the moving party fails to serve a timely 'safe harbor' letter." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-11 (6th Cir. 2002) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997)).

## B. Discussion

### A. Twenty-One Day Safe Harbor

The threshold question the Court must address is whether, given the fact that Marshall failed to comply with the twenty-one day safe harbor provision of Rule 11, this Court may still analyze the substance of the instant Motion to determine whether Rule 11 sanctions against Rawlings would be appropriate. "[T]he rule is unquestionably explicit…that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'" *Ridder*, 109 F.3d at 296 (quoting former Fed. R. Civ. P. 11(c)(1)(A)). More specifically, "a party seeking sanctions must follow a two-step process: first serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Id.* at 294. Moreover, "the motion for sanctions…shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper…is not withdrawn or appropriately corrected." *Id.* (quoting former Fed. R. Civ. P. advisory committee note (1993 amendments)). Marshall admits in the beginning of the instant Motion her failure to comply with Rule 11's safe harbor provision:

> [w]hile Plaintiff preferred to place Defendant on notice prior to filing this Motion to allow Defendant twenty-one (21) days to withdraw its disqualification Motion, Plaintiff had no choice but to file now because Defendant has requested an expedited ruling on its disqualification Motion prior to the expiration of the 21 day period.

[DN 139, at 1.] Indeed, Marshall filed her Motion for Sanctions against Rawlings only three days after Rawlings filed its Motion to Disqualify Guarascio as counsel for Marshall. Irrespective of the fact that the Court expedited the briefing schedule with respect to the Motion to Disqualify, [DN 143], Marshall's failure to comply with the twenty-one day safe harbor provision of Rule 11 cannot be excused and, as a result, her Motion must be denied.

### B. The Imposition of Rule 11 Sanctions in not Warranted on the Merits

Even if Marshall had complied with the twenty-one day safe harbor provision of Rule 11, this Court would have found that Rawlings' Motion to Disqualify Guarascio did not warrant the imposition of sanctions, thus still requiring the denial of Marshall's instant Motion.

First, Marshall contends that Rawlings should be sanctioned due to allegedly filing the Motion to Disqualify for an "improper purpose." Specifically, Marshall argues that the correct inference to be made from Rawlings filing the Motion to Disqualify at such a late stage in the litigation is that it did so "to harass Plaintiff, clutter the record with more pre-trial issues for this Court to decide, and [to] cause unnecessary delay in the expedition of the trial and [to] cause Plaintiff unnecessary litigation expense." [DN 139, at 5-6.] The Court acknowledges the tardiness of the Motion to Disqualify, but that alone does not rise to the level of an "improper purpose" under the meaning of Rule 11. As the Sixth Circuit explained in *United States ex rel. Tingley v. PNC Financial Servs. Grp., Inc.*, 705 F. App'x 342, 346 (6th Cir. 2017), "the bad faith exception resembles Rule 11, which specifies that improper purpose exists when the litigation is being pursued to harass or to cause unnecessary delay or needless increase in the cost of litigation." (internal citations and quotations omitted). Importantly though, this case was originally decided by this Court on summary judgment in April 2016, [DN 87], and was remanded in part by the Sixth Circuit in April 2017. [DN 90.] And so while Rawlings certainly

could have moved to disqualify Guarascio in the time period before this Court granted Rawlings summary judgment initially, *i.e.*, prior to April 2016, the timing of its Motion to Disqualify Guarascio was not so attenuated from the date of remand so as to justify this Court in concluding that the only reason for its filing could be "to harass or to cause unnecessary delay or needless increase in the cost of litigation" to Marshall's detriment. *See PNC Financial Servs. Grp.*, 705 F. App'x at 346. Indeed, Rawlings' Motion to Disqualify required the careful consideration of this Court, as it presented an issue well-grounded in fact based upon Guarascio's former employment relationship with Rawlings, the defendant in this case.

Marshall's other argument is that Rawlings' Motion to Disqualify was not well-grounded in fact and not warranted by a good faith argument. [DN 139, at 2.] With this the Court must disagree. Certainly, the Court decided above to deny Rawlings' Motion to Disqualify Guarascio, but it does not automatically follow that the Motion itself was frivolous, or that no good faith argument was made in favor of disqualification. For the most part, Marshall disagrees with Rawlings' characterization of the nature of her position as an in-house lawyer at the company from 2009-2011, who she interacted with while she was employed there, and the nature of the information she obtained through that employment. In short, it is a factual dispute, and one which falls well short of rising to the level necessary to warrant the imposition of sanctions against Rawlings. For example, Marshall takes issue with Rawlings' contention in its Motion to Disqualify that Guarascio "gained unique insights" into Bradshaw's and Plumley's "background, history, and 'thought processes,'" which could "lead to the exposure of attorney-client privileged information on cross-examination." [*Id.* at 3-4 (quoting Rawlings' Motion to Disqualify, DN 137).] Marshall calls this contention "absurd," but does not deny that she knew and interacted with Plumley and Bradshaw throughout the course of her term of employment with the company,

13

only offering that such interactions did not occur daily or as often as Rawlings' Motion appeared to indicate. [*See* DN 139, at 4.] Plainly then, Marshall contends that Rawlings overestimated, or exaggerated, Guarascio's level of involvement with Plumley and Bradshaw. This is the usual type of scale-balancing in which this Court and all courts engage when deciding the merits of all manner of different motions. It is *not* the kind of factual dispute, however, which would lead this Court to determine that Rawlings should be sanctioned for frivolity in bringing its Motion.

Marshall also argues that Rawlings' claim in its Motion to Disqualify that Marshall would not be prejudiced by the disqualification of Guarascio is frivolous. However, the Court already decided above that Guarascio should not be disqualified. Moreover, although the filings in this case indicate that Guarascio has had a heavy level of involvement in the case, it was not frivolous for Rawlings to argue that Chris Sanders' involvement as Guarascio's co-counsel in this matter would diminish any prejudice to Marshall should Guarascio have been disqualified. Consequently, even if Marshall had complied with the twenty-one day safe harbor provision of Rule 11, the Motion for Sanctions against Rawlings would still need to be denied on the merits.

### IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** that Rawlings' Motion to Disqualify Guarascio [DN 137] is **DENIED**, and Marshall's Motion for Sanctions against Rawlings [DN 139] is **DENIED.**

**IT IS SO ORDERED.**

cc: Counsel of Record