UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-359-TBR



**FILED**
VANESSA L. ARMSTRONG, CLERK
MAR 3 0 2018
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**GLORIA MARSHALL**

**v.**

**THE RAWLINGS COMPANY, LLC**

**JURY INSTRUCTIONS**

# INTRODUCTION

Members of the jury, it is now time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain the elements, or parts, of the two claims in question.

You have two main duties as a juror:

The first is to decide what the facts are from the evidence that you saw and heard here in Court. Deciding what the facts are is your job—not mine. Nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and apply it to the facts. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial and these instructions now. All of the instructions are important, and you should consider them together as a whole.

The lawyers may have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons and businesses stand equal before the law and are to be treated as equals.

You are to consider only the evidence in the case. Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you *understand* the evidence, but it is not evidence.

Another part of your job as jurors is to decide how credible, or believable, each witness was. This is your job, not mine. It is up to you to decide if a witness's testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions.

## INSTRUCTION NO. 1

### Burden of Proof

Gloria Marshall, whom I will refer to as "the Plaintiff" throughout these instructions, has the burden of proving her case by what is called a **preponderance of the evidence**. This means that the Plaintiff must produce evidence that, considered in light of all the facts, leads you to believe that what she claims is more likely true than not.

The term "preponderance of the evidence" does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been established by a preponderance of the evidence in the case, you may—unless otherwise instructed—consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter legal standard applicable in criminal cases. It does not apply in civil cases like this one. Therefore, you should disregard it.

## INSTRUCTION NO. 2

### The Nature of an FMLA Claim

The Plaintiff claims that she was retaliated against by The Rawlings Company, which I will refer to as "the Defendant" in these instructions, for exercising her rights under the Family and Medical Leave Act, a law which is often referred to as "FMLA."

This law entitles an eligible employee to take up to twelve weeks of unpaid leave during any twelve-month period for many different reasons. One of these reasons would be because the employee has a serious health condition which makes her unable to perform the essential functions of her position.

The FMLA gives the employee the right, following FMLA leave, to either return to the position she held when the leave began, or to an **equivalent position**. An **"equivalent position"** is a position that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perks, and status. It must involve the same or substantially the same duties, which must entail substantially equivalent skill, effort, responsibility, and authority.

Under the FMLA, it is unlawful for any employer to interfere with, restrain or deny a right provided by the FMLA, or to retaliate against an employee for taking FMLA.

As you listen to the instructions on this claim, please keep in mind that some of the terms I will use have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion as to what these terms mean.

## INSTRUCTION NO. 3

### Elements of an FMLA Retaliation Claim: the Plaintiff's Demotion

In this case, the Plaintiff's first claim against the Defendant is for retaliation in violation of the FMLA. She first claims that she was retaliated against unlawfully when she was <u>demoted</u> from Team Lead to Analyst. In order to prevail on her claim of FMLA retaliation relating to her <u>demotion</u>, the Plaintiff must prove all of the following things by a preponderance of the evidence:

**First**, the Plaintiff engaged in an **"FMLA-protected activity;"**

**Second**, the Defendant knew that she was exercising her rights under the FMLA;

**Third**, after learning of the Plaintiff's exercise of FMLA rights, the Defendant took adverse employment action against her by <u>demoting</u> her; and

**Fourth**, the Plaintiff's act of engaging in FMLA-protected activity was a **motivating factor** for the adverse employment action of <u>demoting</u> her.

The term **"FMLA-protected activity"** includes, but is not limited to, requesting or taking leave under the FMLA.

With respect to the <u>fourth element</u> listed above, the Plaintiff may recover under one of two alternative and mutually exclusive legal theories:

**Theory One.** The first theory is that the "decision maker," that is, Laura Plumley, the individual who made the decision to demote the Plaintiff, harbored a retaliatory bias in making the decision to demote the Plaintiff from Team Lead to Analyst. Under Theory One, you must ask the question of whether the Plaintiff's act of engaging in an FMLA-protected activity was a motivating factor in Laura Plumley's decision to demote her. In determining whether the Plaintiff's taking of FMLA leave was a **"motivating factor"** in Laura Plumley's decision, it is

not necessary that the Plaintiff prove that her FMLA leave was the sole reason for Laura Plumley's decision; the FMLA leave may just be a motivating reason. A motivating reason is a reason or desire that causes someone to take action.

**Theory Two.** The second, alternative legal theory under which the Plaintiff may recover is a theory of liability called "Cat's Paw" liability. Theory Two ("Cat's Paw") creates the basis for employer liability even when there is no evidence of bias against the Plaintiff by the ultimate decision maker, here meaning Laura Plumley, the person who made the decision to demote the Plaintiff. Instead, the theory rests on the allegation that a biased subordinate intentionally manipulated Laura Plumley. Under these circumstances, Laura Plumley's intent as the decision maker does not matter, and consequently the honesty of her belief does not matter. Under Theory Two ("Cat's Paw"), you the jury must ask this question: whether Jeff Bradshaw and/or Mike Elsner, motivated by a retaliatory bias, intentionally manipulated the decision maker, Laura Plumley, who, in turn, made the decision to demote the Plaintiff. In other words, in the absence of evidence that Laura Plumley harbored a retaliatory bias against her, the Plaintiff may prevail under Theory Two ("Cat's Paw") if she shows by a preponderance of the evidence that Mike Elsner and/or Jeff Bradshaw intentionally manipulated Laura Plumley, and the fact that the Plaintiff had taken FMLA leave was a "motivating factor" in their decision to deliver that information to Laura Plumley.

In reaching your decision regarding the "motivating factor" element under Theory Two ("Cat's Paw"), you should look to the individuals that the Plaintiff contends held retaliatory motives or biases against her based on the fact that the Plaintiff had taken FMLA leave: Mike Elsner and Jeff Bradshaw. Then, you should ask the question of whether one or both of these

individuals intentionally manipulated Laura Plumley for retaliatory purposes, and whether that information played a role in the decision to demote the Plaintiff.

Keep in mind that, under Theory Two ("Cat's Paw"), the decision maker's intent does not matter and, consequently, the honesty of the decision maker's belief that he or she is not acting unlawfully in rendering an adverse employment decision like demoting an employee does not matter.

If you determine that the Plaintiff, either under Theory One or Theory Two ("Cat's Paw"), has proven the four above-referenced elements by a preponderance of the evidence, then you must find in favor of the Plaintiff on her claim of FMLA retaliation relating to her demotion.

However, even if you find that the Plaintiff has proven the four above-referenced elements by a preponderance of the evidence, but you further find that the Defendant has proven by a preponderance of the evidence that, even if it did take the Plaintiff's exercise of her rights under the FMLA into account, it would have made the decision to demote the Plaintiff anyways, then you must find for the Defendant on this claim.

## INSTRUCTION NO. 4

### Elements of an FMLA Retaliation Claim: the Plaintiff's Termination

As I said before, the Plaintiff's first claim against the Defendant is for retaliation in violation of the FMLA. She also claims that she was retaliated against unlawfully when she was terminated from her job with the Defendant. In order to prevail on her claim of FMLA retaliation relating to her termination, the Plaintiff must prove all of the following things by a preponderance of the evidence:

**First**, the Plaintiff engaged in an **"FMLA-protected activity;"**

**Second**, the Defendant knew that she was exercising her rights under the FMLA;

**Third**, after learning of the Plaintiff's exercise of FMLA rights, the Defendant took adverse employment action against her by terminating her; and

**Fourth**, the Plaintiff's act of engaging in FMLA-protected activity was a **motivating factor** for the adverse employment action of terminating her.

The term **"FMLA-protected activity"** includes, but is not limited to, requesting or taking leave under the FMLA.

Again, with respect to the fourth element listed above, the Plaintiff may recover under one of two alternative, mutually exclusive legal theories:

**Theory One.** The first theory is that the "decision maker," that is, George Rawlings, the individual who made the decision to terminate the Plaintiff, harbored a retaliatory bias in making that decision. Under this theory, you must ask the question of whether the Plaintiff's act of engaging in an FMLA-protected activity was a motivating factor in George Rawlings' decision to terminate her. In determining whether the Plaintiff's taking of FMLA leave was a "motivating factor" in George Rawlings' decision to terminate her, it is not necessary that the Plaintiff prove

9

that her FMLA leave was the sole reason for the decision; the FMLA leave may just be a motivating reason. A motivating reason is a reason or desire that causes someone to take action.

**Theory Two.** The second, alternative legal theory under which the Plaintiff may recover is a theory of liability called "Cat's Paw" liability. Theory Two ("Cat's Paw") creates the basis for employer liability even when there is no evidence of bias against the Plaintiff by the ultimate decision maker, here meaning George Rawlings, the person who made the decision to terminate the Plaintiff. Instead, the theory rests on the allegation that a biased subordinate intentionally manipulated George Rawlings. Under these circumstances, George Rawlings' intent does not matter, and consequently the honesty of his belief does not matter. Under Theory Two ("Cat's Paw"), you the jury must ask this question: whether Jeff Bradshaw and/or Mike Elsner intentionally manipulated an intermediate decision maker, Laura Plumley, who in turn, either oblivious to or adopting the subordinate's bias, influenced the ultimate decision maker, George Rawlings. In other words, in the absence of evidence that either Laura Plumley or George Rawlings harbored a retaliatory bias against her, the Plaintiff may prevail under Theory Two ("Cat's Paw") if she shows by a preponderance of the evidence that Jeff Bradshaw and/or Mike Elsner intentionally manipulated Laura Plumley, the fact that the Plaintiff had taken FMLA leave was a "motivating factor" in their decision to deliver that information to Laura Plumley, and finally, that George Rawlings was influenced by the information provided to him by Laura Plumley in reaching his decision to terminate the Plaintiff.

In reaching your decision regarding the "motivating factor" element under Theory Two ("Cat's Paw"), you should look to the individuals that the Plaintiff contends held retaliatory motives or biases against her based on the fact that the Plaintiff had taken FMLA leave: Mike Elsner and Jeff Bradshaw. Then, you should ask the question of whether one or both of these

individuals intentionally manipulated Laura Plumley for retaliatory purposes, and whether that information was then relayed to George Rawlings, and finally, whether that information played a role in the decision to terminate the Plaintiff.

Keep in mind that, under Theory Two ("Cat's Paw"), the decision maker's intent does not matter and, consequently, the honesty of the decision maker's belief that he or she is not acting unlawfully in rendering an adverse employment decision like terminating an employee does not matter.

If you determine that the Plaintiff, either under Theory One or Theory Two ("Cat's Paw"), has proven the four above-referenced elements by a preponderance of the evidence, then you must find in favor of the Plaintiff on her claim of FMLA retaliation relating to her termination.

However, even if you find that the Plaintiff has proven the four above-referenced elements by a preponderance of the evidence, but you further find that the Defendant has proven by a preponderance of the evidence that, even if it did take the Plaintiff's exercise of her rights under the FMLA into account, it would have made the decision to terminate the Plaintiff anyways, then you must find for the Defendant on this claim.

## INSTRUCTION NO. 5

### The Nature of an ADA Discrimination Claim

I will now instruct you on the Plaintiff's second claim in this case. The Plaintiff's second claim is one for discrimination in violation of the Americans with Disabilities Act, often referred to as the "ADA." Under the ADA, it is illegal for an employer to discriminate against a person with a disability if that person is qualified to do the essential functions of her job and the employer is aware of her limitations. In this case, the Plaintiff claims that the Defendant discriminated against her by demoting and, later, terminating her because she had a disability.

You have heard testimony that the Plaintiff sent emails to Mike Elsner which contained certain medical information relating to the Plaintiff. You also heard testimony that Mike Elsner forwarded those emails to Jeff Bradshaw. Sharing that medical information with Jeff Bradshaw or others is not a violation of the ADA.

Finally, as you listen to these instructions, please keep in mind that many of the terms I will use have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion as to what these terms mean.

**Elements of the Plaintiff's ADA Discrimination Claim Relating to her Demotion**

I will now instruct you on the individual elements of a claim for discrimination under the ADA, as they relate to the Plaintiff's <u>demotion</u> from Team Lead to Analyst. The Plaintiff claims that her disability was the reason for the Defendant's decision to <u>demote</u> her. To succeed on this claim, the Plaintiff must prove by a preponderance of the evidence, each of the following five things:

**First**, the Plaintiff had a "**disability**," as that term is defined under the ADA, or was "**regarded**" by the Defendant as having a disability;

**Second**, the Plaintiff was otherwise "**qualified**" to perform the "**essential functions**" of her job with or without accommodation;

**Third**, the Defendant <u>demoted</u> the Plaintiff;

**Fourth**, the employer knew or had reason to know of the Plaintiff's disability; and

**Fifth**, the Defendant <u>demoted</u> the Plaintiff "**because of her disability**."

### "Because of her disability"

The <u>fifth element</u> of an ADA discrimination claim requires that the Plaintiff show she was <u>demoted</u> "because of her disability." With respect to this fifth element, the Plaintiff may recover under one of two alternative, mutually exclusive legal theories:

**Theory One.** Under Theory One, the Plaintiff must prove by a preponderance of the evidence that the decision maker, that is, Laura Plumley, the individual who made the decision to demote the Plaintiff, harbored a discriminatory bias in making the decision to demote her, and that her disability was the "**but for cause**" of Laura Plumley's decision to demote her. In other words, the sole reason why Laura Plumley decided to demote the Plaintiff was her disability or

Laura Plumley's having regarded her as having a disability. This differs from the "motivating factor" language of the Plaintiff's FMLA retaliation claim.

**Theory Two.** The second, alternative legal theory under which the Plaintiff may recover is "Cat's Paw" liability. Similar to her claim of FMLA retaliation, the Plaintiff has made the claim that the Defendant is liable for ADA discrimination under Theory Two ("Cat's Paw"), which creates a basis for employer liability when there is no evidence of bias against the Plaintiff by the ultimate decision maker, here meaning Laura Plumley, the person who made the decision to demote the Plaintiff. Instead the theory rests on the idea that a biased subordinate intentionally manipulated Laura Plumley. Under these circumstances, Laura Plumley's intent as the decision maker does not matter, and consequently the honesty of her belief does not matter. Under Theory Two ("Cat's Paw"), you the jury must ask this question: whether the Plaintiff has proven by a preponderance of the evidence that Jeff Bradshaw and/or Mike Elsner, because of the Plaintiff's disability or their having regarded her as having a disability, intentionally manipulated the decision maker, Laura Plumley, in her decision to demote the Plaintiff.

Remember, under the Cat's Paw theory, the decision maker's intent does not matter and, consequently, the honesty of the decision maker's belief that he or she is not acting unlawfully in rendering an adverse employment decision like demoting an employee does not matter.

If you determine that the Plaintiff, under either Theory One or Theory Two (Cat's Paw"), has proven each of the five elements of the ADA Discrimination claim relating to her demotion by a preponderance of the evidence, then you must find for the Plaintiff on this claim. If you find that the Plaintiff has failed to prove any one of these five elements by a preponderance of the evidence, then you must find for the Defendant.

14

**Elements of the Plaintiff's ADA Discrimination Claim Relating to her Termination**

I will now instruct you on the individual elements of a claim for discrimination under the ADA, as they relate to the Plaintiff's termination. The Plaintiff also claims that her disability was the reason for the Defendant's decision to terminate her. To succeed on this claim, the Plaintiff must prove by a preponderance of the evidence, each of the following five things:

**First,** the Plaintiff had a **"disability,"** as that term is defined under the ADA, or was **"regarded"** by the Defendant as having a disability;

**Second,** the Plaintiff was otherwise **"qualified"** to perform the **"essential functions"** of her job with or without accommodation;

**Third,** the Defendant terminated the Plaintiff;

**Fourth,** the employer knew or had reason to know of the Plaintiff's disability; and

**Fifth,** the Defendant terminated the Plaintiff **"because of her disability."**

The definition and explanation of the phrase **"because of her disability"** that I explained to you above in Instruction No. 6 applies in full force to Instruction No. 7 as well.

Again, with respect to element five, the question of whether the Defendant terminated the Plaintiff "because of her disability," the Plaintiff may recover under one of two alternative, mutually exclusive legal theories, as I have already explained:

**Theory One.** Under Theory One, the Plaintiff must prove by a preponderance of the evidence that the decision maker, that is, George Rawlings, the individual who made the decision to terminate the Plaintiff, harbored a discriminatory bias in making the decision to terminate her, and that her disability was the "but for cause" of George Rawlings' decision to terminate her. In other words, the sole reason why George Rawlings decided to terminate the Plaintiff was her

disability or his having regarded the Plaintiff as having a disability. This differs from the "motivating factor" language of the Plaintiff's FMLA retaliation claim.

**Theory Two.** The second, alternative legal theory under which the Plaintiff may recover is "Cat's Paw" liability. Theory Two ("Cat's Paw") creates the basis for employer liability when there is no evidence of bias against the Plaintiff by the ultimate decision maker, here meaning George Rawlings, the person who made the decision to terminate the Plaintiff. Instead, the theory rests on the idea that a biased subordinate intentionally manipulated George Rawlings. Under these circumstances, George Rawlings' intent does not matter, and consequently the honesty of his belief does not matter. Under Theory Two ("Cat's Paw"), you the jury must ask this question: whether the Plaintiff has proven by a preponderance of the evidence that Jeff Bradshaw and/or Mike Elsner, because of the Plaintiff's disability or their having regarded her as having a disability, intentionally manipulated an intermediate decision maker, Laura Plumley, who in turn, either oblivious to or adopting the subordinate's bias, influenced the ultimate decision maker, George Rawlings, in his decision to terminate the Plaintiff.

Remember, under the Cat's Paw theory, the decision maker's intent does not matter and, consequently, the honesty of the decision maker's belief that he or she is not acting unlawfully in rendering an adverse employment decision like terminating an employee does not matter.

If you determine that the Plaintiff, under either Theory One or Theory Two ("Cat's Paw"), has proven each of the five elements of the ADA Discrimination claim relating to her termination by a preponderance of the evidence, then you must find for the Plaintiff on this claim. If you find that the Plaintiff has failed to prove any one of these five elements by a preponderance of the evidence, then you must find for the Defendant.

## ADA Definitions: "Qualified Individual"

I will now provide you with some further definitions that will be useful to you in reaching your decisions on the Plaintiff's ADA discrimination claims relating to her demotion and to her termination:

Under the ADA, **"disability"** means a physical or mental impairment that **"substantially limits"** a **"major life activity."** This includes any mental or psychological disorder such as an intellectual disability, organic brain syndrome, emotional or mental illnesses, and learning disabilities.

Under the ADA, an employee is **"regarded as"** having a **"disability"** if her employer:

(1) mistakenly believes that the employee has a physical or mental impairment that substantially limits one or more major life activities, or

(2) mistakenly believes that an actual, non-limiting impairment substantially limits one or more of an employee's "major life activities."

I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

### "Substantially Limits"

Under the ADA, the term **"substantially limits"** means that the activity is limited to a considerable or large degree. It is not necessary that the plaintiff be completely unable to engage in the activity. An impairment can substantially limit a major life activity even though the plaintiff is still able to engage in the activity to some extent.

Factors you may consider in determining whether, in this case, the Plaintiff's ability to work was substantially limited, include the condition, manner, or duration under which the Plaintiff performed the work as compared to most people in the general population.

### "Major Life Activities"

As defined under the ADA, **"major life activities"** include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working, as well as the proper operation of a major bodily function.

A **"qualified individual"** under the ADA is a person who meets legitimate skill, experience, education, or other requirements of an employment position that she holds or seeks, and who can perform the **"essential functions"** of the position with or without reasonable accommodation.

### "Essential Functions"

Under the ADA, the term **"essential functions"** means the fundamental duties of a particular position. Factors you <u>may</u> consider in reaching your determination as to whether the Plaintiff was able to perform the essential function of the position she held at the Defendant company include:

(1) The employer's judgment as to what functions of the job are essential;

(2) whether the reason the position exists is to perform that function;

(3) whether there are a limited number of employees available among whom the performance of that job function can be distributed;

(4) whether the job function is highly specialized, and the person in that particular position is hired for her expertise or ability to perform the particular function;

18

(5) the amount of time spent performing the job function;

(6) the consequences of not requiring the individual holding the position to perform the function;

(7) the terms of any collective bargaining agreement;

(8) the work experience of past employees who have held the position; and

(9) the work experience of current employees that hold similar positions.

## INSTRUCTION NO. 9

### Damages

Now, it is the duty of the Court to instruct you about the measure of damages in this case. Keep in mind, though, that by instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find that the Plaintiff has proved one or more of her claims against the Defendant, then you must determine what amount of damages, if any, the Plaintiff is entitled to recover. The Plaintiff has the burden of proving damages by a preponderance of the evidence.

The term **"damages"** means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendant. It is for you to determine what damages, if any, have been proved by the Plaintiff. Damages may not be based on speculation or sympathy. They must be based on the evidence presented at trial and only that evidence.

The purpose of **"compensatory damages"** is to make the Plaintiff whole—that is, to compensate the Plaintiff for the damages she has suffered. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant.

If you decide to award the Plaintiff compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You may only award compensatory damages for injuries that the Plaintiff proves were proximately caused by the Defendant's alleged wrongful conduct. The Plaintiff must show that

20

her injuries would not have occurred without the Defendant's actions. The amount of damages may not include any damages that you find were not caused by the Defendant's actions.

As I will describe in more detail below, the Plaintiff may not recover compensatory damages for pain and suffering under her FMLA retaliation claims relating to her demotion and termination, but she *may* recover those compensatory damages under the ADA discrimination claims relating to her demotion and termination. Therefore, if you decide that the Defendant engaged in unlawful discrimination in violation of the ADA with respect to the demotion, the termination, or both, you may award damages for any pain and suffering, emotional distress, mental anguish, humiliation, embarrassment, or personal indignity that the Plaintiff experienced as a consequence of the Defendant's unlawful conduct. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

You are further instructed that in awarding compensatory damages, you are not to award damages for the amount of wages that the Plaintiff would have earned, either in the past or in the future, if she had continued in employment with the Defendant. These elements of recovery of wages that the Plaintiff would have received from the Defendant are called **"back pay"** and **"front pay"** and are to be awarded separately under instructions I will give to you in a moment. Any amounts for "back pay" and "front pay" are to be entered separately on the verdict form.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play not part in your calculation of damages.

21

## INSTRUCTION NO. 10

### Punitive Damages

The Plaintiff claims the acts of the Defendant were done with malice or reckless indifference to the Plaintiff's federally protected rights and that as a result there should be an award of what are called "**punitive damages**." A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future.

An award of punitive damages is permissible in this case only if you the jury find by a preponderance of the evidence that one or more management officials of the Defendant personally acted with malice or reckless indifference to the Plaintiff's federally protected rights under the ADA. An action is "with malice" if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is "with reckless indifference" if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of the Plaintiff's federal rights under the ADA, you cannot award punitive damages if the Defendant proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that alleged to have been suffered by the Plaintiff.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, and that the Defendant has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

22

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish the Defendant. You should also consider whether actual damages standing alone are sufficient to deter or prevent the Defendant from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those the Defendant is alleged to have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which the Defendant should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter the Defendant or others from committing similar wrongful acts in the future.

The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources. Therefore, if you find that punitive damages should be awarded against the Defendant, you may consider the financial resources of the Defendant in fixing the amount of such damages.

## INSTRUCTION NO. 11

### Back Pay

I will now instruct you on "back pay." If you find in favor of the Plaintiff on one or more of her claims, you may award her the back pay she would have earned if the Defendant had not demoted and/or terminated her. The Plaintiff has the burden of proving both the existence and the amount of back pay to which she is entitled by a preponderance of the evidence. You may award as actual damages an amount that reasonably compensates the Plaintiff for any lost wages and benefits, including a pension, which the Plaintiff would have received from the Defendant if she had not been demoted and/or terminated.

Back pay damages, if any, apply from the time the Plaintiff was demoted until the date of your verdict. You must reduce any award of back pay by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages the Plaintiff has earned from other employment during the relevant period of time.

However, please note that you should not deduct social security benefits, unemployment benefits, and pension benefits from an award of back pay.

## INSTRUCTION NO. 12

### Mitigation

I will now instruct you on the concept of **"mitigation."** In this case, the Plaintiff had a legal duty to "mitigate her damages." This means that the Plaintiff was required to make reasonable efforts under the circumstances to reduce her damages by seeking substantially equivalent employment, if any was available.

It is the Defendant's burden to prove that the Plaintiff failed to mitigate her damages, as well as to what degree, if any, she failed to do so. If the Defendant proves to you by a preponderance of the evidence that the Plaintiff failed to obtain substantially equivalent job opportunities that were reasonably available to her, you must reduce the award of damages by the amount of the wages that the Plaintiff would reasonably have earned if she had obtained those opportunities.

## INSTRUCTION NO. 13

### Front Pay

If you find in favor of the Plaintiff on one or more of her claims, you may determine separately a monetary amount equal to the present value of any future wages or benefits that the Plaintiff would reasonably have earned from the Defendant if the Plaintiff had not been demoted and/or terminated from her position for the period running from the date of your verdict through a reasonable period of time in the future, **not to exceed three years**.

From this figure you must subtract the amount of earnings and benefits the Plaintiff will receive from other employment during that time. The Plaintiff has the burden of proving front pay damages by a preponderance of the evidence.

If you find that the Plaintiff is entitled to recover future earnings from the Defendant, then you must reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

You must also reduce any award to its present cash value by considering the interest that the Plaintiff could earn on the amount of the award if she made a relatively risk-free investment. You must make this reduction because an award of an amount representing future loss of earnings is more valuable to the Plaintiff is she receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date she would have earned the money.

Therefore, you should decrease the amount of any award for loss of future earnings by the amount of interest that the Plaintiff can earn on that amount in the future. The rate of return to be applied in determining present cash value should be the interest that can reasonably be

expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money which may be caused by future inflation.

## INSTRUCTION NO. 14

### Damages Available under each of the Plaintiff's Claims

I will now instruct you as to the categories of damages available for each of the Plaintiff's claims. I have already talked to you about Compensatory Damages, Back Pay, and Front Pay. I will now explain to you how these categories fit in with the Plaintiff's claims.

The Plaintiff has claims for retaliation in violation of the FMLA relating to both her demotion and her termination, and for discrimination in violation of the ADA relating to both her demotion and her termination.

### (1) FMLA Retaliation

If you find in favor of the Plaintiff on her claim of FMLA retaliation relating to her demotion, her termination, or both, then you may award her any actual monetary losses she suffered as a direct result of the Defendant's violation. This includes Back Pay and Front Pay. However, in compensating the Plaintiff for her lost wages, you are not permitted to provide her with a monetary award for intangible losses such as pain, suffering, mental and emotional distress, or humiliation that she alleges she suffered, nor are you permitted to award her punitive damages under the FMLA. This is because the FMLA damages provision limits any damages awarded to the Plaintiff to actual economic losses sustained as a direct result of the violation.

### (2) ADA Discrimination

If you find in favor of the Plaintiff on her claim of ADA discrimination relating to her demotion, her termination, or both, then you may award her any Back Pay, Front Pay, and Compensatory Damages you find that the Plaintiff is entitled to. You are also permitted, at your discretion, to award her any Punitive Damages to which you find that she is entitled. Unlike under the FMLA, under the ADA the Plaintiff is allowed to recover Compensatory Damages,

28

which includes any pain, suffering, mental and emotional distress, humiliation, and other intangible damages she may have suffered as a direct result of the Defendant's violation, as well as Punitive Damages. If you find in favor of the Plaintiff on her ADA discrimination claim, and you further find that she is entitled to Compensatory Damages for things such as pain and suffering, and/or Punitive Damages, in no event shall your award for Compensatory Damages and/or Punitive Damages for the Plaintiff exceed the sum of $300,000.

# INSTRUCTION NO. 15

## Duplicate Damages

**Duplicate Damages.** There can be only one recovery of damages for one wrong or one injury. Double recovery of damages is impermissible. If you find that any item of damages sought by the Plaintiff is duplicative of, or included within, another item of damages sought, you may not award both items. This is especially important in this case, because the Plaintiff has claims under two different statutes: the FMLA and the ADA, which are based upon two different incidents: her demotion and her termination. It is essential that you the jury keep in mind that, should you find in favor of the Plaintiff on one or more of her claims, she may not recover the same damages twice simply because she has two different claims or legal theories.

For example, if you were to find in favor of the Plaintiff on her claim of FMLA retaliation relating to her demotion, and in favor of the Plaintiff on her claim of ADA discrimination relating to her demotion, and further, that she is entitled to Back Pay, you may not award her twice the actual amount she is entitled to simply because she prevailed on both of those claims. In other words, in such a case, you would not be permitted to award the Plaintiff Back Pay twice. Of course, Back Pay and Front Pay (actual monetary losses) are separate from Compensatory Damages for intangible damage such as pain, suffering, mental and emotional distress, and humiliation and Punitive Damages. However, Compensatory Damages and Punitive Damages may not be duplicitously awarded either. This means that, should you find in favor of the Plaintiff on her ADA claim relating to her demotion and relating to her termination, the total sum of money you may award her in Compensatory Damages and/or Punitive Damages (in Interrogatory Nos. 6 and 8) may not exceed a combined total of $300,000.

30

## INTERROGATORY NO. 16

### Jury Deliberations

When you go back to the jury room, you will discuss the case with your fellow jurors to reach an agreement if you are able to do so. The first order of business should be the selection of a foreperson. That person will preside over your deliberations and speak for you here in Court.

Your verdict must be unanimous and based solely on the evidence and on the law as I have given it to you in these instructions. You must all agree on any verdict you reach.

Each of you must decide the case for yourself, but you should do so only after you consider all the evidence, discuss it fully with each other, and listen to the views of your fellow jurors.

Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right.

This case has taken a great deal of time and effort to prepare and try. There is no reason to think it could be better tried or that another jury is better qualified to decide it. Therefore, it is important that you reach a verdict if you can do so conscientiously.

If it looks at some point as if you may have difficulty in reaching a unanimous verdict, you should reexamine your position to see whether you have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with you. You should not hesitate to reconsider your views from time to time and to change them if you think this is appropriate.

It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination. Do not surrender an honest

conviction as to the weight and effect of the evidence simply to reach a verdict one way or the other.

Do not talk to the Marshal or to me or to anyone else, except for each other, about this case or where each individual juror stands at any given time. If it becomes necessary during your deliberations to communicate with me, you may send a note through the Marshal signed by your foreperson or by one or more members of the jury.

No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing or here in open Court. For example, do not write down or tell anyone that you are split on your verdict 4-4 or 6-2 one way or another. That should stay secret until you have finished your deliberations.

## INSTRUCTION NO. 17

### Notes

You may have taken notes during the trial on the notepads provided to you by the Court. That's fine, and you may take these back with you to the jury room for your deliberations.

However, it is very important to remember that your notes should be used only as memory aids. You should not give your notes precedence over your independent recollection of the evidence.

If you have not taken notes, you should rely upon your independent recollection of the proceeding and you should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinions regarding the facts of the case.

You will notice that we have an official court reporter making a record of the trial. However, we will not have a typewritten transcript from the record available for your use in reaching your decision in this case.

## INSTRUCTION NO. 18

### Return of Verdict Form

I have prepared verdict forms for your use in making your verdict. After you have reached unanimous agreement on a verdict, if you are able to do so, your foreperson will fill in the forms that have been given to you and advise the Marshal outside your door that you are ready to return to the courtroom. After you return to the courtroom, your foreperson will deliver the completed verdict forms as directed.

## INTERROGATORY NO. 1

### FMLA Retaliation: the Plaintiff's Demotion

As set forth in **Instruction No. 3**, do you the jury find that the Plaintiff has proved by a preponderance of the evidence her claim for FMLA retaliation relating to her demotion?

Yes _____ No _____

Foreperson Signature _____ Date _____

If you selected "Yes," upon which legal theory, laid out in **Instruction No. 3**, did you base your decision with respect to element four? (Only select one)

Theory One _____ Theory Two ("Cat's Paw") _____

Foreperson Signature _____ Date _____

**\*\*\*If you found <u>in favor of the Plaintiff</u> in Interrogatory No. 1, please proceed to Interrogatory No. 2 on the next page.**

**\*\*\*If you found <u>in favor of the Defendant</u> in Interrogatory No. 1, please proceed to Interrogatory No. 3.**

## INTERROGATORY NO. 2

### Damages: the Plaintiff's Claim for FMLA Retaliation Relating to her Demotion

**\*\*\*You should answer Interrogatory No. 2 <u>only</u> if you found in favor of the Plaintiff in Interrogatory No. 1.**

Do you the jury find by a preponderance of the evidence that the Plaintiff sustained actual monetary damages, and that such damages were a direct and proximate result of the Defendant's <u>demotion</u> of the Plaintiff in violation of the FMLA?

Yes _____          No _____

Foreperson Signature _____          Date _____

If your answer is "Yes," please provide those values in the spaces below:

Back Pay                                                    $ _____

Front Pay (not to exceed three years)                       $ _____

Foreperson Signature _____          Date _____

**\*\*\*Regardless of your answer to Interrogatory No. 2, please proceed to Interrogatory No. 3 on the next page.**

## INTERROGATORY NO. 3

### FMLA Retaliation: the Plaintiff's Termination

As set forth in **Instruction No. 4**, do you the jury find that the Plaintiff has proved by a preponderance of the evidence her claim for FMLA retaliation relating to her termination?

Yes _____     No _____

Foreperson Signature _____     Date _____

If you selected "Yes," upon which legal theory, laid out in **Instruction No. 4**, did you base your decision with respect to element four? (Only select one)

Theory One _____     Theory Two ("Cat's Paw") _____

Foreperson Signature _____     Date _____

\*\*\*If you found <u>in favor of the Plaintiff</u> in Interrogatory No. 3, please proceed to <u>*Interrogatory No. 4*</u> on the next page.

\*\*\*If you found <u>in favor of the Defendant</u> in Interrogatory No. 3, please proceed to <u>Interrogatory No. 5.</u>

37

## INTERROGATORY NO. 4

**Damages: the Plaintiff's Claim for FMLA Retaliation Relating to her Termination**

**\*\*\*You should answer Interrogatory No. 4 only if you found in favor of the Plaintiff in Interrogatory No. 3.**

Do you the jury find by a preponderance of the evidence that the Plaintiff sustained actual monetary damages, and that such damages were a direct and proximate result of the Defendant's termination of the Plaintiff in violation of the FMLA?

Yes _____     No _____

Foreperson Signature _____     Date _____

If your answer is "Yes," please provide those values in the spaces below:

Back Pay                                                            $ _____

Front Pay (not to exceed three years)                              $ _____

Foreperson Signature _____     Date _____

**\*\*\*Regardless of your answer to Interrogatory No. 4, please proceed to Interrogatory No. 5 on the next page.**

## INTERROGATORY NO. 5

### ADA Discrimination: the Plaintiff's Demotion

As set forth in **Instruction No. 6**, do you the jury find that the Plaintiff has proved by a preponderance of the evidence her claim for ADA discrimination relating to her demotion?

Yes _____ No _____

Foreperson Signature _____ Date _____

If you selected "Yes," upon which legal theory, laid out in **Instruction No. 6**, did you base your decision with respect to element five? (Only select one)

Theory One _____ Theory Two ("Cat's Paw") _____

Foreperson Signature _____ Date _____

\*\*\*If you found <u>in favor of the Plaintiff</u> in Interrogatory No. 5, please proceed to <u>Interrogatory No. 6</u> on the next page.

\*\*\*If you found <u>in favor of the Defendant</u> in Interrogatory No. 5, please proceed to <u>Interrogatory No. 7</u>.

## INTERROGATORY NO. 6

### Damages: the Plaintiff's Claim for ADA Discrimination Relating to her Demotion

**\*\*\*You should answer Interrogatory No. 6 only if you found in favor of the Plaintiff in Interrogatory No. 5.**

Do you the jury find by a preponderance of the evidence that the Plaintiff sustained damages, and that such damages were a direct and proximate result of the Defendant's demotion of the Plaintiff in violation of the ADA?

Yes _____          No _____

Foreperson Signature _____          Date _____

If your answer is "Yes," please provide those values in the spaces below:

| | |
|---|---|
| Back Pay | $_____ |
| Front Pay (not to exceed three years) | $_____ |
| Compensatory Damages (Pain and Suffering the Plaintiff has endured or is reasonably certain to endure.) | $_____ |
| Punitive Damages | $_____ |

**\*\*\*Any award for Compensatory Damages and/or Punitive Damages shall not exceed the total sum of $300,000.**

Foreperson Signature _____          Date _____

**\*\*\*Regardless of your answer to Interrogatory No. 6, please proceed to Interrogatory No. 7 on the next page.**

40

## INTERROGATORY NO. 7

### ADA Discrimination: the Plaintiff's Termination

As set forth in **Instruction No. 7**, do you the jury find that the Plaintiff has proved by a preponderance of the evidence her claim for <u>ADA discrimination relating to her termination</u>?

Yes _____        No _____


Foreperson Signature _____        Date _____


If you selected "Yes," upon which legal theory, laid out in **Instruction No. 7**, did you base your decision with respect to element five? (Only select one)

Theory One _____        Theory Two ("Cat's Paw") _____


Foreperson Signature _____        Date _____


**\*\*\*If you found <u>in favor of the Plaintiff</u> in Interrogatory No. 7, please proceed to Interrogatory No. 8 on the next page.**

**\*\*\*If you found <u>in favor of the Defendant</u> in Interrogatory No. 7, your verdict is <u>complete</u> and you may instruct the Marshal that you are ready to return to the Courtroom.**

## INTERROGATORY NO. 8

### Damages: the Plaintiff's Claim for ADA Discrimination Relating to her Termination

**\*\*\*You should answer Interrogatory No. 8 only if you found in favor of the Plaintiff in Interrogatory No. 7.**

Do you the jury find by a preponderance of the evidence that the Plaintiff sustained damages, and that such damages were a direct and proximate result of the Defendant's termination of the Plaintiff in violation of the ADA?

Yes _____     No _____

Foreperson Signature _____     Date _____

If your answer is "Yes," please provide those values in the spaces below:

| | |
|---|---|
| Back Pay | $_____ |
| Front Pay (not to exceed three years) | $_____ |
| Compensatory Damages (Pain and Suffering the Plaintiff has endured or is reasonably certain to endure.) | $_____ |
| Punitive Damages | $_____ |

**\*\*\*Any award for Compensatory Damages and/or Punitive Damages shall not exceed the total sum of $300,000.**

Foreperson Signature _____     Date _____

**\*\*\*You have completed the verdict forms and you may instruct the Marshal that you are ready to return to the Courtroom.**