UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-359-TBR


GLORIA MARSHALL,                                                                 PLAINTIFF

v.

THE RAWLINGS CO., LLC,                                                          DEFENDANT

### Memorandum Opinion & Order

This matter is before the Court upon Motion by Plaintiff Gloria Marshall, ("Plaintiff"),
for reasonable attorneys' fees and an award of expenses and costs. [DN 203.] This matter is ripe
for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that attorneys' fees
be awarded in the amount of $226,015 and that costs be awarded in the amount of $5,080.25.
The Court's calculations and reasoning are explained in detail below.

### A. Factual and Procedural Background

This case stems from events which transpired at the offices of Defendant The Rawlings
Company, LLC, ("Rawlings"), during the course of Plaintiff's employment there. In short,
Plaintiff suffers from anxiety, depression, bipolar disorder and post-traumatic stress disorder,
("PTSD"), for which she took various stints of leave under the Family and Medical Leave Act,
("FMLA"), while working for Rawlings. Throughout the time period during which Plaintiff was
taking that leave, she alleged that she suffered discriminatory and retaliatory treatment, the
culmination of which was her demotion from Team Lead, a managerial position, back to analyst,
a lower position hierarchically, and her eventual termination from the company on October 1,
2013.

Subsequently, Plaintiff filed a lawsuit against Rawlings alleging claims of (1) FMLA Interference/Discrimination, (2) FMLA retaliation, (3) Americans with Disabilities Act ("ADA") discrimination, and (4) intentional infliction of emotional distress. This Court granted summary judgment in favor of Rawlings on all four of Plaintiff's claims. Upon review, the Sixth Circuit Court of Appeals affirmed this Court's judgment in part, and reversed it in part, remanding Plaintiff's claims for FMLA retaliation and ADA discrimination. *See Marshall v. The Rawlings Co., LLC*, 854 F.3d 368 (6th Cir. 2017). Eventually, a jury trial was held in this matter from March 26, 2018 to March 30, 2018 in Louisville, Kentucky, wherein Plaintiff's two remaining claims were tried.

At the conclusion of the trial, the jury found in favor of Plaintiff on her claims of ADA discrimination relating to her demotion and termination and found for Rawlings on her claims of FMLA retaliation relating to her demotion and termination. As a result, the jury awarded Plaintiff $456,000. More specifically, with respect to her claim for ADA discrimination relating to her demotion, the jury awarded her the following sums: $81,000 in back pay; $75,000 for pain and suffering; and $75,000 in punitive damages. With respect to her claim for ADA discrimination relating to her termination, the jury awarded her the following sums: $75,000 in front pay; $75,000 for pain and suffering; and $75,000 in punitive damages. [*See* DN 193.]

Presently, Plaintiff has filed the instant Motion seeking the sum of $241,360 for reasonable attorneys' fees and $5,080.25 in related costs and expenses in pursuing this matter. [*See* DN 203-1, at 1.] Plaintiff was represented in this case by three attorneys: Jill Guarascio, Chris Sanders, and Robyn Smith. The $241,360 represents a requested billing rate for all three attorneys of $350 per hour, multiplied by 689.6 hours billed in total. [*Id.* at 1-3.] The $5,080.25

represents what Plaintiff's counsel describes as "pre-trial deposition and transcript costs," "filing costs," and "trial deposition expenses." [*Id.* at 18-19.]

## B. Discussion

The two main requests for relief presented in Plaintiff's instant Motion are her requests for (a) attorneys' fees incurred in litigating this action, and (b) the expenses and costs incurred doing the same. The Court will analyze these issues separately.

### 1. Plaintiff's Request for Attorneys' Fees

The first issue is Plaintiff's request for attorneys' fees. According to the instant Motion and the exhibits attached thereto, between the three attorneys who worked on this case on Plaintiff's behalf, Guarascio, Sanders and Smith, a total of 689.6 hours were spent pursuing this matter. [DN 203-1, at 3.] Additionally, Plaintiff's attorneys have asked that the hourly rate be set at $350 per hour for all three of them, which results in a total requested fee of $241,360. [*Id.* at 1.]

#### a. Legal Background

"In the United States, parties are ordinarily required to bear their own attorney's fees— the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). Thus, "[u]nder this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). However, "[p]ursuant to the provisions of 42 U.S.C. § 12205, a court presiding over an ADA action 'may allow the prevailing party, other than the United States, a reasonable

attorney's fee, including litigation expenses, and costs." *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 780 (6th Cir. 2011) (quoting 42 U.S.C. § 12205).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Of course, in so seeking an award of attorneys' fees, the movant "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* The resultant product of the above equation is referred to as the "lodestar." *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The term "lodestar" means "a star that leads or guides," such as the North Star;[1] in the legal world, the lodestar provides district courts with a baseline number, a guiding figure concerning what is a "reasonable" fee under the particular circumstances of a given case.

After determining the lodestar, "[t]he trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citing *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)). In so doing, district courts may look to the twelve factors listed by the Fifth Circuit Court of Appeals in the seminal case of *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). These twelve factors are:

    (1) the time and labor required by a given case;

    (2) the novelty and difficulty of the questions presented;

    (3) the skill needed to perform the legal service properly;

    (4) the preclusion of employment by the attorney due to acceptance of the case;

    (5) the customary fee;

---

[1] https://www.merriam-webster.com/dictionary/lodestar.

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Reed*, 179 F.3d at 471-72 n.3 (citing *Johnson*, 488 F.2d at 717-19). "Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his [or her] lodestar fee." *Adcock-Ladd*, 227 F.3d at 350 (citations omitted). Thus, "modifications to the lodestar are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts." *Id.* (citations omitted). But before the factors are analyzed, the lodestar must be calculated.

### b. Plaintiff's Lodestar Figure

As noted above, Plaintiff's instant Motion indicates that 689.6 hours of work were performed by Guarascio, Sanders, and Smith at a rate of $350 per hour, for a total of $241,360. [DN 203-1, at 1-3.] Guarascio, Sanders and Smith have all provided the Court with some information concerning their background, and all three have indicated in some fashion that $350 per hour is, for them, their standard fee in this type of case. Guarascio states in her attached Declaration that "the hourly rate of $350.00 is my customary rate," [DN 203-5, at 2]; Sanders makes a similar averment, [DN 203-3, at 2]; and Smith indicates the same. [DN 203-4, at 4.] According to these filings, Guarascio has been practicing law for around eighteen years, [DN 203-1, at 14], Sanders has been practicing for around thirty years, [DN 203-3, at 1], and Smith

roughly ten years. [DN 203-4, at 2.] Finally, counsel for Plaintiff has attached to the instant Motion affidavits from the following individuals: Robert Bishop, Rheanne Falkner, Ruby Fenton, and Andrew Horne, all four of whom are Kentucky labor/employment attorneys who aver that, in their opinions, the rate of $350 per hour is reasonable in this geographical area. [*See* DNs 203-6; 203-7; 203-8; 203-9.]

In its Response, Rawlings argues that the affidavits supplied by Plaintiff do not actually "establish[] the *prevailing market rate* for attorneys of comparable skill and experience in the Louisville area," meaning that, in Rawlings' view, "Plaintiff [has] fail[ed] to carry her burden of establishing the reasonableness of the rates claimed." [DN 221, at 2 (emphasis in original).] Relatedly, Rawlings also argues that $350 per hour is too expensive a rate, and suggests that the Court lower the figure to $300 per hour for Sanders and to $180 for Guarascio and Smith. [*Id.* at 1-2.] Rawlings' reduction argument is based in part on the fact that, as this Court noted above, Sanders has roughly thirty years of experience, while Guarascio and Smith have eighteen and ten years of experience, respectively. The Court will address each of Rawlings' arguments in turn.

The Court will first analyze Rawlings' argument concerning Plaintiff's proffered affidavits and the "prevailing market rate" principle. Rawlings is correct in noting that "the lodestar looks to 'the prevailing market rates in the relevant community.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v Stenson*, 465 U.S. 886, 895 (1984)). In doing so, the lodestar attempts to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* And as the Sixth Circuit Court of Appeals has instructed, the "prevailing market rate" is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *B & G*

*Mining, Inc. v. Director, Office of Workers' Compensation Programs*, 522 F.3d 657, 663 (6th Cir. 2008) (internal quotation marks and citations omitted). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir, 2007) (citing *Lamar Adver. Co. v. Charter Twp. Of Van Buren*, 178 F. App'x 498 (6th Cir. 2006) (there noting that even if an award of $370 per hour would be reasonable, "the record support[ed] the district court's conclusion that $200 per hour [wa]s sufficient to encourage competent lawyers in the relevant community to undertake legal representation.").

Having considered the parties' arguments and the corresponding affidavits, the Court is satisfied that at least one of the affidavits contains the kind of specificity required to defeat Rawlings' argument. Of course, there are no magic words a party must include in an affidavit in order to make it sufficiently specific to demonstrate the "prevailing market rate." This is not to say that there is no difference between an attorney submitting an averment that a particular hourly rate is "reasonable" and an averment that a particular hourly rate constitutes the prevailing market rate in that geographical area, and three of the four affidavits submitted by Plaintiff in the instant Motion appear to toe that line rather precariously. However, the fourth affidavit is sufficiently clear in its explanation. The relevant portions of the affidavits in question are as follows:

First, from Joe Bishop's affidavit: "Based on my knowledge and experience in the employment litigation arena, I am of the opinion that an hourly rate of $350.00 is a reasonable value for the services rendered in this geographical market area by Plaintiff's counsel in this case." [DN 203-6.]

Second, from Rheanne Falkner's affidavit: "I am of the opinion that an hourly rate of $350.00 is a reasonable value of the services rendered in this geographical market area by Robyn Smith, Christopher Sanders, and Jill Guarascio…." [DN 203-7.]

Third, from Ruby Fenton's affidavit: "I am of the opinion that an hourly rate of $350.00 is a reasonable value of the services rendered in this geographical market area by attorneys experienced in employment litigation including litigation relating to ADA discrimination claims…." [DN 203-8.]

Fourth, from Andrew Horne's affidavit: "I have been told that these lawyers ar[e] charging $350 per hour for their work in this case. Based on my experience as a lawyer in Louisville handling discrimination litigation, it is my opinion that this hourly rate is reasonable *and in line with rates charged by other comparable attorneys in the Louisville legal market*." [DN 203-9 (emphasis added).]

The italicized language taken from the Horne Affidavit falls squarely within what this Court views as an explanation of the "prevailing market rate" in the Western District of Kentucky. While the affidavits from Bishop, Falkner, and Fenton do not provide as much language which hones in on that specific question, the Horne Affidavit does so. Also of importance is that, in his affidavit, Sanders avers that the $350-per-hour rate "is reasonable and fall[s] squarely within the range of market rates that were charged in the Louisville legal market by attorneys with similar experience from 2014-2018." [DN 203-3, at 3.] Smith avers the same. [DN 203-4.] Moreover, even if the affidavits from Bishop, Falkner, and Fenton give Rawlings some concern, the Court views them as sufficient for purposes of this Motion. Namely, while none of the three affidavits include the phrase "prevailing market rate," or contain specific language which would easily direct attention to this idea, as the Horne Affidavit does, the above-

quoted language from the first three affidavits still goes to what the Sixth Circuit Court of Appeals refers to as the question of what a lawyer "can *reasonably* expect to command within the venue of the court of record," although perhaps in an imprecise fashion. *See B & G Mining*, 522 F.3d at 663.

Rawlings' second argument is that the lodestar's hourly rate calculation also takes into account an attorney's "skill and experience…." *B & G Mining*, 522 F.3d at 663. As noted above, relevant documentation indicates that Guarascio, Sanders and Smith have widely varying degrees of experience in the legal field. Guarascio has been practicing law for approximately eighteen years, and avers in her Declaration that her "practice focuses primarily on labor and employment law, specifically including harassment, discrimination and retaliation claims, similar to those involved in the instant litigation…." [DN 203-5, at 1.] Guarascio has also previously worked as counsel with the National Labor Relations Board. [*Id.* at 1-2.] Sanders has been practicing law for approximately thirty years, and avers in his Declaration that he has "represented employment clients in all kinds of matters and claims—labor, NLRB, discrimination, harassment, wage-hour class and collective actions, and more—up to the present day." [DN 203-3, at 1-2.] Smith has been practicing law for approximately ten years, and avers in her Declaration that she has "represented employment clients in all kinds of matters and claims – discrimination, retaliation, harassment, whistleblower, wage and hour, and other employee-rights matters." [DN 203-4, at 1-2.] Smith has also served as an adjunct professor in the Indiana University system for the past ten years or so. [*Id.* at 2.] It is this large variance in the three attorneys' experience that Rawlings contends should lead to differing hourly rates. Specifically, Rawlings argues that Sanders should be compensated at an hourly rate of $300, and that Smith and Guarascio should be compensated at $180 per hour. [*See* DN 221, at 1.]

In support of this argument, Rawlings has included two affidavits in its Response, one from Louisville attorney Cynthia Doll, and another from Shannon Hamilton, one of Rawlings' attorneys in this case. Doll avers in her affidavit that she is "familiar with prevailing market rates for attorneys practicing employment litigation in the Louisville, Kentucky area," and that a rate of $350 per hour "is in excess of that necessary to attract and adequately compensate competent counsel to practice in employment litigation cases in this area." [DN 221-1, at 1-2.] Doll goes on: "[b]ased on my experience and knowledge of the Louisville legal market, attorneys who have been licensed to practice 8-10 years could not customarily charge a client the same hourly rate as an attorney who has been licensed to practice for approximately 30 years." [*Id.* at 2.] Finally, Doll avers that, based upon her experience, "an hourly rate ranging from $160-250 for attorneys with 8-10 years of licensed practice experience is sufficient," and that "an hourly rate ranging from $275-350 for attorneys with approximately 30 years of licensed practice experience is sufficient…." [*Id.*] In Hamilton's affidavit, she avers that her billing rate in the instant case has been $230 per hour, and her co-counsel's rate has been $195 per hour. [DN 221-2, at 2.] Hamilton has around thirty years of experience in employment litigation, and her co-counsel, Ashley Hopkins, has been licensed to practice law since 2009. [*Id.*] Hamilton also avers that, in her experience, attorneys with thirty years of experience do not typically bill out at the same hourly rate as attorneys with much less experience. [*Id.*]

Rawlings also cites to a great deal of authority concerning different hourly rates which have been set by district courts in both the Western and Eastern Districts of Kentucky. [*Id.* at 11-13.] Such decisions have ordered hourly rates at $300 per hour, $275 per hour, $250 per hour, $200 per hour, $180 per hour, and more. [*See id.*] Of course, "[a]s a general proposition, rates awarded in other cases do not set the prevailing market rate—only the market can do that." *B &*

*G Mining*, 522 F.3d at 664. And while "[r]ates from prior cases can…provide some inferential evidence of what a market rate is," those prior cases do not definitively set the rate. *Id.* The highest hourly rate cited to by Rawlings is a $300 per-hour fee, ordered by this Court in *Say v. Adams*, No. 3:07-cv-377, 2009 U.S. Dist. LEXIS 23863, at *6 (W.D. Ky. Mar. 25, 2009). However, district courts have ordered higher hourly rates than this. In *Pogue v. Northwestern Mut. Life Ins. Co.*, No. 3:14-cv-598, 2017 U.S. Dist. LEXIS 62226, at *9-*10 (W.D. Ky. Apr. 24, 2017), the district court ordered a $340 hourly rate. In *Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 886, 895 (W.D. Ky. 2012), the district court ordered, in part, a $350 hourly rate. In short, district courts in the Western District of Kentucky, and in districts all over the country, issue wide ranging hourly fee rates depending upon numerous factors, including experience, the type of case, and, of course, the prevailing market rate in that locale at the relevant time period.

All four of the affidavits attached to Plaintiff's instant Motion indicate the reasonableness of a $350 per-hour rate in Louisville, Kentucky, and Guarascio, Sanders and Smith have all averred that $350 per hour is their customary fee. [*See generally* DN 203 and attachments.] Also, Guarascio, Sanders and Smith have attached their billing records from this case, which evidence a rate of $350 per hour, although of course, Plaintiff was not actually being charged that figure during this case's life. [*See* DNs 203-3; 203-4; 203-5.] And, at least with respect to Sanders, Rawlings' submitted affidavit of Cynthia Doll shows that $350 is within what she would consider to be an acceptable range, although, of course, her proposed range was $275-$350. [DN 221-1, at 2.] Having considered all of this, the Court is satisfied that, as an attorney with thirty years of experience, $350 per hour is the appropriate rate for Sanders. This rate aligns with the affidavits and records submitted by Plaintiff, it falls at the high end of one of Rawlings'

submitted affidavits, but still within its range, and it is commensurate with the many years of experience Sanders has as an attorney.

However, Sanders has much more experience as an attorney than Guarascio or Smith. Rawlings argues forcefully that this fact should be taken into account by the Court in reaching its decision on hourly rates, and the Court agrees. Rawlings' argument is persuasive, and is bolstered by both of its submitted affidavits. Further, while district courts often point to very specific facts inherent in a particular case in reaching a determination concerning the prevailing market rate and what constitutes a reasonable fee for an attorney, the Court finds a common thread running through many of these cases. This thread is that, quite often, attorneys with different amounts of experience are compensated at different rates. *See ACLU of Kentucky, Inc. v. Grayson Cnty.*, No. 4:01-cv-202, 2008 U.S. Dist. LEXIS 96800 (W.D. Ky. Nov. 26, 2008) (setting an hourly rate of $300 for an attorney with thirty-one years of experience and an hourly rate of $180 for an attorney with eight years of experience); *Bench Billboard Co. v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:05-cv-172, 2007 U.S. Dist. LEXIS 71137 (W.D. Ky. Sept. 25, 2007) (setting an hourly rate of $305 for an attorney with thirty-six years of experience and an hourly rate of $275 for an attorney with twenty-seven years of experience); *Thies*, 839 F. Supp. 2d at 895-96 (setting an hourly rate of $275 for work done by an attorney at the beginning of a case, and increasing the rate to $350 for work completed later). The Eastern District of Kentucky has done the same. *See Laney v. Getty*, No. 5:12-cv-306, 2014 U.S. Dist. LEXIS 147051 (E.D. Ky. Oct. 14, 2014) (setting an hourly rate of $300 for an attorney with over twenty-five years of experience, and an hourly rate of $180 for an attorney with five years of experience; *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480, 488 (E.D. Ky. 2010) ("reasonable hourly rates are: $300 for partner work, $150 for associate level work…"); *ACLU*

*of Kentucky v. McCreary Cnty.*, No. 99-507-JBC, 2009 U.S. Dist. LEXIS 22206 (E.D. Ky. Mar. 13, 2009) (setting an hourly rate of $300 for an attorney with thirty years of experience, and an hourly rate of $180 for an attorney with less than ten years of experience).

The Court is also guided by the practical realities of the legal world, namely, that experience drives up prices. The more experience an attorney possesses, the higher the price he or she is able to command for their services. The vast differences in years of experience amongst Sanders and Guarascio and Smith necessitate a slight decrease in Guarascio's and Smith's respective hourly rates. Accordingly, the Court will reduce Guarascio's rate to $325 per hour and Smith's rate to $300 per hour. Guarascio has twelve years' less experience than Sanders, who will be billed out at $350 per hour, and Smith has roughly twenty years' less experience than Sanders (and around eight years' less than Guarascio). These rates fall within an acceptable range of what the Court views as the prevailing market rate in the Western District of Kentucky, they are within the range of what other courts have awarded attorneys and, of particular importance, they will be "adequately compensatory" without "producing a windfall…." *See Gonter*, 510 F.3d at 616.

As a final footnote concerning the issue of reasonable hourly fee rates, the Court finds it necessary to note that this case began in 2014, roughly four years ago. Courts may, in their discretion, award hourly fee rates that increase over the life of a case. Considerations could be the fact that an attorney's actual hourly rate increased during the life of the case, or the fact that, when a case began, an attorney had considerably less experience than later in a case's life. *See Thies*, 839 F. Supp. 2d at 895 (this court awarding a rate of $275 per hour to an attorney for the period of the case before January 2010, the time at which the attorney raised his rate, and awarding a rate of $350 for the remainder of the case). The Court finds that no such adjustment

is necessary here. When this case began, Sanders had already been practicing for roughly twenty-six years and Guarascio had been practicing for around fourteen years. Both attorneys had already gathered partner-level experience in the legal field and the Court sees no need to adjust their rates year by year. Smith, on the other hand, only had five or six years of experience when this case began. However, Smith did not become involved in the lawsuit until 2018, at which time she was already approaching ten years of experience, and so the Court finds no need for a downward adjustment of her rate from $300 per hour either.

Having determined that Sanders will be compensated at $350 per hour, Guarascio at $325 per hour, and Smith at $300 per hour, the Court must next determine "the number of hours reasonably expended on the litigation" in order to properly calculate the lodestars. *See Hensley*, 461 U.S. at 433. Sanders' submitted billing statement evidences 314.5 hours expended on this case which, at a rate of $350 per hour, provides a total of $110,075. [*See* DN 203-3, at 4-9.] Guarascio's billing statement evidences 203.6 hours expended which, at an adjusted rate of $325 per hour, provides a total of $66,170. [*See* DN 203-5, at 5-9.] Smith's billing statement evidences 171.5 hours expended which, at an adjusted rate of $300 per hour, provides a total of $51,450. [*See* DN 203-4, at 7-11.] In its Response, Rawlings argues that the 689.6 total hours evidenced in these three billing statements are excessive, and that the Court should reduce the award accordingly. In particular, Rawlings takes issue with approximately twenty-five separate billing entries from Guarascio, Sanders and/or Smith, and argues that the Court should strike these from its award of attorneys' fees.

Supreme Court and Sixth Circuit Court of Appeals precedent make clear that an attorney may only recover those hours "reasonably expended on the case…." *See Hensley*, 461 U.S. at 433-34; *see also Adcock-Ladd*, 227 F.3d at 349. "Counsel for the prevailing party should make a

good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary….” *Id.* at 434. Further, “‘[p]urely clerical or secretarial’ tasks are not compensable.” *Miller v. Davis*, 267 F. Supp. 3d 961, 996 (E.D. Ky. 2017) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). These types of tasks involve work that does “not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence.” *Id.* at 996-97 (citations omitted). With this legal framework in mind, the Court will review the billing entries with which Rawlings takes issue.

First, Sanders billed 6.8 hours under the description of “Drafting complaint.” Likewise, Guarascio billed 2.4 hours under the description “Draft verified Complaint and obtain client signature.” Rawlings argues that 9.2 hours is excessive for the preparation of a complaint, and that 2.4 of the hours are duplicative. [DN 221, at 15.] The Court finds no issue with these entries. There is no legal requirement that only one attorney work on pleadings, and Rawlings has not shown that the work was unnecessarily duplicative.

Next, Rawlings argues that the 0.6 hours billed by Guarascio on May 7, 2014 should be excluded because it consisted of filing and serving a complaint. [*Id.*] The Court agrees that this is clerical work that will be stricken from Guarascio’s total bill.

Next, Rawlings argues that 6.6 hours Sanders billed under the description “EEOC charge” should be excluded as “not properly compensable,” and that the time was unnecessary because the EEOC complaint was filed on May 9, 2014. [*Id.*] Courts have held that time spent on an EEOC complaint and related preparation is recoverable. *See Shesko v. City of Coatesville*, No. Civ.A.-01-cv-6780, 2004 WL 1918783 (E.D. Pa. Aug. 26, 2004). The Court will permit these hours, as they were not necessarily focused only on the drafting of the EEOC complaint, but the

EEOC process more generally. However, the Court will exclude the 0.8 hours billed by Guarascio for filing the EEOC charge. As explained above, such filing constitutes clerical work.

Rawlings next asks that the Court exclude 3.8 hours from Sanders' bill spent responding to Rawlings' motion to dismiss, and 8.2 hours from Guarascio's bill for the same. Specifically, while the response in question was filed on June 26, 2014, [DN 10], Sanders' entries indicate 2.5 hours worked on such a response on July 7 and 8, 2014. [DN 203-3, at 5.] Because no explanation has been given in Plaintiff's Reply concerning this discrepancy, the Court is inclined to exclude those 2.5 hours. As for Guarascio's 8.2 hours spent on the response, the Court finds it a reasonable use of time and will not reduce the figure.

Next, Rawlings makes requests that the Court exclude certain hours that Sanders and Guarascio billed for various discovery matters. [DN 221, at 16-17.] The Court will allow all such hours spent on discovery to remain in Sanders' and Guarascio's bills, respectively. The Court finds none of the entries to be plainly excessive, or unnecessarily duplicative. Further, while Rawlings takes issue with the dates listed in Sanders' bill wherein he describes responding to written discovery, Sanders has clarified that the year listed should have been 2015 and not 2014. [*See* DN 225-10, Sanders Affidavit.] The Court is satisfied with this explanation. The Court will also leave included the 0.7 hours spent by Guarascio on a motion/proposed agreed order for extension of time. [*See* DN 221, at 17.]

Rawlings next argues that the time spent by Sanders and Guarascio responding to Rawlings' motion for summary judgment was duplicative and excessive. Specifically, Sanders has listed six entries for a total of 20.3 hours, and Guarascio has seven entries totaling 51.1 hours. Rawlings takes further issue with the fact that, on six of her entries, Guarascio billed an even 8.0 hours. [*See id.*] While the total value (71.3 hours) is admittedly high, Guarascio and

Sanders both aver that their time records are accurate and reflect work actually done by them. [*See* DNs 225-9; 225-10.] Accordingly, the Court will leave this time included in their final bills.

The next billing entry with which Rawlings takes issue is 9.7 hours billed by Guarascio on March 5 and 6, 2016 drafting responses to Rawlings' motions in limine. [DN 221, at 18.] Rawlings notes that their motions in limine were not filed until March 17, 2016. [*Id.*] In an affidavit attached to Plaintiff's Reply, Guarascio avers the following: "I am aware that Defendant takes issue with the time I spent working on responses to motions *in limine*, I can confirm that on those days described, I spent the time noted working on the items described." [DN 225-9, at 3.] Obviously, there is a discrepancy between the activity described and the date on which it was purportedly done. However, Guarascio *did* file responses to ten motions in limine in March of 2016, and the descriptions Guarascio provides in her billing statement make specific references to those motions filed by Rawlings, *i.e.*, Rawlings' motion "to exclude comments other employees made about Rawlings' attitude toward FMLA," its motion "to exclude other employee comments about [Jeff] Bradshaw," and more. [*See* DN 203-5, at 7.] Additionally, Sanders billed no work for these responses and Smith was not yet working on this case. Thus, notwithstanding the dating discrepancy, the Court is satisfied that Guarascio spent time drafting the responses, and will not exclude this time.

Next, Rawlings takes issue with 1.7 hours Sanders billed for "case opening forms." [DN 221, at 18.] Rawlings contends that the work was purely clerical and, alternatively, vague and so should be excluded by the Court. The Court will leave this entry in, as it is far from certain that this work was purely clerical.

Rawlings next argues that 4.3 hours Sanders billed throughout the case on "Research" should be excluded as lacking sufficient detail or, alternatively, the research should have been

delegated to someone else. [*Id.*] The Court will leave these hours included. Specifically, Sanders avers that he did, in fact, spend these hours researching and, moreover, that neither Guarascio nor Smith work for him and so there is no "delegation" option available to him. [*See* DN 225-10.] Likewise, the Court will leave included the 0.5 hours Sanders billed for time spent "review[ing] [the] appeal." [DN 221, at 18.] Such work was reasonable even if Rawlings' appellate brief had not been filed yet, because Plaintiff was the party appealing the Court's decision.

The next set of Sanders' billing entries with which Rawlings takes issue are as follows: one hour on "prep for hearing," 8.0 hours on "oral argument," 0.5 hours on "prep for hearing," and one hour on "meeting preparation." [DN 221, at 19.] The Court finds the time spent preparing for and participating in oral argument before the Sixth Circuit Court of Appeals, as well as his preparation for the telephonic hearings, to be reasonable. Rawlings makes general objections, namely, that the entries lack sufficient detail or that the time spent was excessive, but the Court sees no glaring issues and is hesitant to second-guess contemporaneously-kept billing entries of this nature, especially since Sanders has submitted an affidavit attesting to the validity of these entries. [DN 225-10, Sanders averring the following: "I can also confirm that I performed the stated hours of work on the appellate papers, the oral argument preparation and delivery…."]

Rawlings also contends that the Court should exclude the one hour Sanders entered on October 29, 2017 for "office work," as it is clerical in nature or, alternatively, too vague. [DN 221, at 19.] Because Sanders was more specific with other entries, such as indicating that time was spent on research or preparation for hearings or drafting arguments, and merely says "office work" here, the Court finds it likely to be work that was clerical in nature. And even if it was not

clerical work, the description is too general to make out what else it might be. Accordingly, the Court will exclude this hour.

Next, Rawlings wishes to have excluded 19.0 hours Sanders billed on March 28, 2018 for "trial" and "trial preparation." This day was the third day of the trial in this matter, and the Court finds it a reasonable amount of time to have spent on trial-related matters. Trials often produce extended work days, and this trial was no exception.

Rawlings next asks the Court to exclude 12.0 hours Guarascio billed for the preparation of witness and exhibit lists, both in 2016 (before this Court originally granted summary judgment to Rawlings) and in 2018 (before the trial was held). [DN 221, at 20.] Rawlings argues that the two entries each for witness list preparation and exhibit list preparation are duplicative. However, this is not the case, as a great deal of trial preparation was done in 2016 before this Court initially granted summary judgment to Rawlings. Upon remand, the case was rescheduled for trial in 2018, and adjusted preparations likely had to be made, especially considering the fact that the Sixth Circuit Court of Appeals' ruling extended the Cat's Paw theory of liability to cases like this one. Moreover, 12.0 hours total on these documents is not an excessive amount of time.

Rawlings next asks the Court to exclude 3.9 hours Guarascio spent drafting a motion for sanctions. [DN 221, at 20.] Specifically, Rawlings argues that, because the motion was denied (and was, in its view, baseless), Guarascio should not be compensated for this time. The Court will leave the 3.9 hours included.

Next, Rawlings asks the Court to exclude 12.6 hours Smith billed in March of 2018 for reviewing case-related items such as the docket, pleadings, affidavits, depositions, discovery documents, and more, as Rawlings feels it should not have to pay for hours Smith spent "getting up to speed" on the case. [*Id.*] Rawlings cites to no case law that this type of time is not

otherwise compensable. Moreover, Smith was brought on mere weeks before the trial in this matter, a case which had been ongoing since 2014, and Smith examined multiple witnesses at trial and gave Plaintiff's closing argument. The Court finds the time to be entirely reasonable and will leave it included in her bill.

Rawlings also asks that the Court exclude 7.3 hours Smith spent in the time leading up to trial researching Rawlings' witnesses and business practices, as well as reviewing testimonial evidence in other cases in which Rawlings was involved. Such work was a reasonable use of time and the hours will be left in Smith's bill.

Rawlings next asks the Court to exclude 11.1 hours Smith spent on jury configurations, meeting and teleconferencing with consultants, formulating a jury selection plan, and more of the same. This is a reasonable amount of time to spend on such issues in the time leading up to trial. The fact that *voir dire*, in the end, only lasted around an hour does not bear upon Smith's preparation for the event, and the Court finds 11.1 hours to be reasonable.

Consistent with the above analysis, the Court finds the following values to reflect the lodestars for Guarascio, Sanders and Smith:

Guarascio's rate is $325 per hour. Her allowable billed hours total 202.2 hours, after striking 1.4 hours in noncompensable time above. Thus, her lodestar is (325 x 202.2) = $65,715.

Sanders' rate is $350 per hour. His allowable billed hours total 311 hours, after striking 3.5 hours in noncompensable time above. Thus, his lodestar is (350 x 311) = $108,850.

Smith's rate is $300 per hour. Her allowable billed hours total 171.5 hours. Thus, her lodestar is (300 x 171.5) = $51,450.

The total number of allowable billed hours is 684.7, and the total lodestar amount for all three attorneys is $226,015.

### c. The *Johnson* Factors

As noted above, once the lodestars have been calculated, "[t]he trial judge may then, within limits, adjust the 'lodestar[s]' to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. And while the trial judge may look to the twelve *Johnson* factors, listed above, and adjust the award accordingly, there is no requirement that he or she do so, and there is a strong presumption in favor of the lodestar figure. *See id.* at 350.

In the present case, Rawlings makes arguments in its Response invoking one of the *Johnson* factors: "the amount involved and *the results obtained*…." *Reed*, 179 F.3d at 471-72 n.3 (citing *Johnson*, 488 F.2d at 717-19) (emphasis added). In particular, Rawlings argues that the amount of attorneys' fees awarded to Guarascio, Sanders and Smith should be commensurate with the amount of success they actually obtained on Plaintiff's behalf. To wit, Rawlings notes that, although the Sixth Circuit Court of Appeals reversed, in part, this Court's grant of summary judgment in favor of Rawlings, it affirmed this Court on two of Plaintiff's four claims. [*See* DN 90, Sixth Circuit Court of Appeals Opinion.] Accordingly, Rawlings asks that this Court reduce the overall award of attorneys' fees by fifty percent for the time period between this case's inception and the Sixth Circuit Court of Appeals' decision on April 20, 2017. [DN 221, at 4-5.]

Rawlings does not contend that Plaintiff is not properly classified as the "prevailing party" as defined and explained in the fee-shifting statutory provision, but instead highlights the fact that two of Plaintiff's four claims were dismissed at the summary judgment phase, and she only prevailed on one of her four claims at trial. [*See id.* (citing *Woods v. Willis*, 631 F. App'x 359, 364 (6th Cir. 2015).] Of course, "[a] plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he [or she] loses on several others and even if that limited success does not grant him [or her] the 'primary relief] he [or she] sought." *McQueary v.*

*Conway*, 614 F.3d 591, 603 (6th Cir. 2010) (quoting *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 790-91 (1989)). However, as Rawlings correctly points out, "[t]he significance of the relief obtained…[does go] to the amount of fees." *Id.* (citing *Hensley*, 461 U.S. at 434-35). The Supreme Court has stated the following on this issue:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as is this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved…The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley*, 461 U.S. at 434-35 (internal quotation marks and citations omitted).

In the present case, Plaintiff's initial four claims were for (1) FMLA Interference/Discrimination, (2) FMLA retaliation, (3) ADA discrimination, and (4) intentional infliction of emotional distress. [*See* DN 19, Plaintiff's Amended Complaint.] Importantly though, these four claims cannot be said to be "based on different facts," nor could it be plausibly argued that Plaintiff's "counsel's work on one claim [would] be unrelated to his [or her] work on another claim." *See Hensley*, 461 U.S. at 434-35. Thus, the Court sees no way to treat these four claims as "unrelated" ones, capable of being split apart "as if they had been raised in separate lawsuits…." *Id.*

Rather, all four of Plaintiff's claims related directly to the same nucleus of facts: she suffers from bipolar disorder, depression, anxiety and PTSD; she took FMLA at different times during her tenure at Rawlings; thereafter, she suffered adverse actions (the demotion and termination) and unfair and isolating treatment as a result of her leave. Whether the conduct at issue could be described as discriminatory or retaliatory, or whether one particular instance or

another gave rise to each claim cannot guide this Court's analysis. This is because all four claims arose out of the same treatment Plaintiff alleged she received, in the same workplace, from largely the same people, and in the same timeframe. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 622 (6th Cir. 2013) (noting that when "issues are intertwined, we stated, plaintiffs would be entitled to fees regardless of their success."); *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (noting that "full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined…."). In many cases, a plaintiff brings claims that are truly distinct and, in such a case, the above-quoted language of the Supreme Court in *Hensley* would demand that this Court engage in a separation of successful and unsuccessful claims in order to properly assess attorneys' fees. However, that is not this case. The Court will not reduce the award of attorneys' fees by fifty percent.

In addition to its fifty-percent-reduction argument, Rawlings argues that the Court should apply a thirty percent reduction to all hours billed by Guarascio, Sanders and Smith in the time period beginning after the Sixth Circuit Court of Appeals' decision on April 20, 2017. [DN 221, at 22.] Rawlings contends that such a reduction is appropriate in this case due to the allegedly "significant amounts of unnecessary, undiscernible, excessive, redundant, or otherwise duplicative work reflected in those records" filed by Guarascio, Sanders and Smith evidencing the time they spent on this case. [*Id.*] In support of this, Rawlings cites to, among other cases, the Sixth Circuit Court of Appeals' decision in *Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999), wherein the decision of the district court was affirmed in, among other things, applying a fifty-percent, across-the-board reduction of the hours sought by the plaintiff's attorneys because they had "individually failed to prove by a preponderance of evidence entitlement to the payment they seek." *Id.* at 472.

The Court finds no such issues here. Upon review of the billing statements provided by all three of Plaintiff's attorneys, the Court finds them sufficient. They contain the standard entries one could expect to find in any number of different law firm offices, with descriptions such as "drafting discovery," or "deposition," or "motion for summary judgment," or "trial preparation." [*See* DN 203-3, at 5.] Some entries are more descriptive than others, such as "review docket and pleadings; review pending motions and previous orders on trial matters," or "conduct additional research and review of Defendant's witnesses in this case; review testimonial evidence in other cases that sets forth policies and practices." [DN 203-4, at 7.] Upon review, none of Guarascio, Sanders, or Smith are unduly vague in their descriptions *en masse*, and Rawlings has presented no compelling argument which would lead this Court to conclude otherwise. Additionally, the Court finds no unnecessarily duplicative work to have been completed by Plaintiff's counsel in this case; if anything, the billing records evidence an appropriately collaborative effort from attorneys working in different offices. Finally, for a case that has lasted roughly four years, the 684.7 total allowable billed hours appears to be quite a reasonable sum. Consistent with its discretion in these matters, the Court will not apply any further reduction to the overall award of attorneys' fees, post-appeal or otherwise.

### 2. Plaintiff's Request for Expenses and Costs

The next issue relates to costs and expenses incurred by Plaintiff's counsel in this matter. [DN 203-1, at 1.] In particular, Plaintiff seeks $5,080.25, representing what Plaintiff describes as "pre-trial deposition and transcript costs," "filing costs," and "trial deposition expenses." [*Id.* at 18-19.] Rawlings references the sum of $5,080.25 at the beginning of its Response, but does not otherwise argue that Plaintiff is not due the costs allegedly incurred, nor argue that the sum is too high. In Guarascio's billing records, filed with Plaintiff's instant Motion, she indicates that

$2,951.75 was spent on "deposition fees" and $909 was spent on "filing fees for Western District and Sixth Circuit Court of Appeals," for a total of $3,860.75. [DN 203-5, at 8.] Further, Plaintiff has attached pre-trial deposition invoices to the instant Motion, which evidence the sums of $596.30, $142.80, and $480.40. [DN 203-10.] All of these figures provide a total sum of $5,080.25. The Court finds this figure to be reasonable for the events for which the costs were incurred, and hereby awards $5,080.25 in costs to Plaintiff.

## C. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff is hereby awarded the sum of $226,015 in attorneys' fees incurred in pursuing this matter. This sum reflects 202.2 hours of work performed by Guarascio at a rate of $325 per hour ($65,715); 311 hours of work performed by Sanders at a rate $350 per hour ($108,850); and 171.5 hours performed by Smith at a rate of $300 per hour ($51,450).

2. Plaintiff is hereby awarded costs in the amount of $5,080.25.

**IT IS SO ORDERED.**

cc:      Counsel of Record